**John C. TESTER, Relator,**

v.

**JEFFERSON LINES, Commissioner of Economic Security, Respondents.**

No. C3–84–1104.

Court of Appeals of Minnesota.

Nov. 20, 1984.

Ernest Kutzik, St. Paul, for relator.

Robert Halagan, Minneapolis, for Jefferson Lines.

Comm. of Economic Security, St. Paul, for Commissioner of Economic Security.

Heard, considered, and decided by POPOVICH, C.J., and HUSPENI and FORSBERG, JJ.

## OPINION

HUSPENI, Judge.

Relator appeals a decision of the Commissioner of Economic Security denying him unemployment compensation benefits. We affirm.

## FACTS

Relator John Tester was employed by respondent Jefferson Lines as a mechanic from February 15, 1978 to his discharge on November 17, 1983.

On November 17, 1983, bus drivers employed by Greyhound Lines were engaged in a strike, and union employees of Jefferson Lines were asked to support the strike and to picket the bus terminal. Because the employer's regular bus drivers refused to cross the picket line to the bus depot, management personnel drove buses to and from the Jefferson garage and the Greyhound terminal.

Jefferson employees were not prohibited from participating in the strike during their off-duty hours. Company policy, however, provided that the employer expected "its employees to be loyal and [would] not tolerate words or acts of hostility to the company, its officers, agents or employees, its service equipment or its condition, or willful disregard of its interest by a driver, or criticism of the company to other than * * superior officers."

Before their regularly scheduled shifts on November 17, 1983, Tester and a coworker, John Marvin, arrived at the Greyhound terminal at approximately 11:30 a.m. to assist with the picketing. The employer's Shop Superintendent, Albert Koerber, and its Director of Safety and Scheduling, Arthur Sterrett, were also at the terminal. Koerberg and Sterrett had driven buses into the depot for loading and unloading and were preparing to return to the Jefferson garage. As Koerber and Sterrett were proceeding toward the entrance of the depot to view the picketing, someone yelled, "Koerber you f***ing scab b*****d." Both Koerber and Sterrett testified that they recognized Tester's voice and turned to face him and Marvin. They testified that Tester then said, "Yes, Koerber I'm talking to you."

While attempting to leave the terminal area after loading the bus later that day, Koerber's Jefferson bus was blocked from exiting the terminal by a number of persons picketing Greyhound Lines. Koerber testified that Tester was standing directly in front of the bus with a picket sign over his shoulder, blocking the bus from the exit. A Minneapolis policeman was required to push Tester out of the way of the bus so that the Jefferson bus could exit.

Tester reported for work that day at approximately 3:00 p.m. for his regularly scheduled shift. Upon arriving at work, he was terminated from his employment because of his conduct in connection with the picketing and for violating company policy. Specifically, Tester was terminated for "obstructing management personnel in the course of business operations, disloyalty, including hostility toward company management personnel, company's service and equipment."

Following his discharge, Tester applied for unemployment compensation benefits. A claims deputy for the Department of Economic Security determined that Tester

was discharged for misconduct and, accordingly, was disqualified from receiving unemployment compensation benefits pursuant to Minn.Stat. § 268.09, subd. 1(2) (Supp. 1983). On Tester's appeal, a referee reversed the determination of the claims deputy.

In his testimony before the referee, Tester stated that he is legally blind, and that Koerber was not visible to him at the time the epithet was shouted. Tester submitted into evidence a film allegedly photographed during the time of the picketing for purposes of impeaching the testimony of the employer's witnesses. There was no testimony regarding when the film was taken, by whom it was taken, or whether it had been edited. It showed no blocking of a bus by Tester.

The employer appealed the referee's decision to the Commissioner. Upon review of the entire record, the Commissioner concluded that Tester was, in fact, discharged for misconduct and reversed the referee's decision.

## ISSUE

Does the record support the decision of the Commissioner of Economic Security that Tester was discharged for misconduct within the meaning of Minn.Stat. § 268.09, subd. 1(2) (Supp.1983), and was properly disqualified from receiving unemployment compensation benefits?

## ANALYSIS

█ In contrast to an appellate court's review of the trial court's factual findings, no special deference need be given by the Commissioner to a referee's findings of fact in economic security cases. *Ramirez v. Metro Waste Control Commission*, 340 N.W.2d 355, 357 (Minn.Ct.App.1983).

█ The fact that the referee's findings were supported by the record is not material to this appeal. In *Chellson v. State Division of Employment and Security*, 214 Minn. 332, 8 N.W.2d 42 (1943), the Minnesota Supreme Court held:

[T]he test on this appeal is whether there is reasonable support in the evidence to sustain the decision of the Director rather than the decision of the appeal tribunal * * * [T]he final administrative authority has the power to review the evidence and make its own independent findings of fact and render a decision thereon, despite the fact that the findings contained in the prior administrative determination had support in the evidence.

*Id.* at 335, 8 N.W.2d at 44. On appeal from the Commissioner's determination, this court's scope of review is narrow and is restricted to determining whether that decision is reasonably supported by the record. *White v. Metropolitan Medical Center*, 332 N.W.2d 25 (Minn.1983).

█ Tester was denied unemployment compensation benefits because he was found to be discharged for misconduct. Minn.Stat. § 268.09, subd. 1(2). The burden of proving misconduct is on the employer. *Lumpkin v. North Central Airlines, Inc.*, 296 Minn. 456, 209 N.W.2d 397 (1973). The Commissioner found that Tester's actions constituted misconduct. There is support in the record for that determination. The employer had a right to expect Tester to refrain from uttering unprovoked obscenities at management personnel and from actively obstructing the employer's buses.

We cannot bring either the obscene comment or the blocking of the bus under the isolated hot-headed incident exception to the misconduct definition. *Windsperger v. Broadway Liquor Outlet*, 346 N.W.2d 142 (Minn.1984). There is no indication that either act was the result of a "temper tantrum" arising from the heat of the moment or from provocation from the employer. *Windsperger; Little v. Larson Bus Service*, 352 N.W.2d 813 (Minn.Ct.App. 1984). Further, the hot-headed incident exception has never been applied to a physical confrontation. *See Hines v. Sheraton Ritz Hotel*, 349 N.W.2d 329, 330 (Minn.Ct.App. 1984).

The strike was not against Tester's employer, and his conduct cannot be excused as normal picket-line activity. Because both incidents occurred in the presence of other employees and could have incited other aggressive behavior, they were likely to interfere with the employer's business.

Tester also argues that the Commissioner's decision should be reversed because Tester was not served with a copy of the employer's notice of appeal of the referee's decision. Neither Minn.Stat. § 268.-10, subd. 5 (Supp.1983), nor Minn.Rules pt. 3310.3000 (1983) requires such service. The appeal was perfected by filing it with the Commissioner. Tester was given actual notice of the appeal, and was well aware of the issues on appeal. He did not request a continuance of the appeal hearing. We conclude that he was not prejudiced by not being served with a copy of the notice of appeal. *See Anderson v. Moberg Rodlund Sheet Metal Company*, 316 N.W.2d 286 (Minn.1982).

Finally, the Commissioner noted a serious lack of foundation regarding the videotape and disregarded it. We find no error in that decision.

### DECISION

Relator was discharged for misconduct within the meaning of Minn.Stat. § 268.09, subd. 1(2), and properly denied unemployment compensation benefits.

Affirmed.