.LaSALLE CARTAGE CO.,
INC., Relator,

v.

Daryl D. HAMPTON, Commissioner of
Economic Security, Respondents.

No. C1–84–1750.

Court of Appeals of Minnesota.

Feb. 12, 1985.

338

Ralph T. Keyes, St. Paul, for relator.
Daryl D. Hampton, pro se.

Hubert H. Humphrey, III, Atty. Gen., Regina M. Chu, Special Asst. Atty. Gen., St. Paul, for respondent Commissioner of Economic Sec.

Considered and decided by PARKER, P.J., and FOLEY and WOZNIAK, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Relator LaSalle Cartage Co., Inc. (LaSalle), appeals from the determination of the Commissioner of Economic Security that claimant Daryl Hampton was disqualified from the receipt of unemployment compensation benefits from the date of January 25, 1984, for failure to accept a suitable offer of reemployment. LaSalle argues that Hampton should be disqualified from April 11, 1983, rather than January 25, 1984.

## FACTS

LaSalle Cartage Co., Inc., is a common carrier which provides "for hire" freight transportation services. Companies using LaSalle's services are referred to as "house" or "contract" accounts.

Truck drivers employed by LaSalle are members of the Teamsters Union. LaSalle was a signator to and subject to the provisions of the National Master Freight Agreement and Central States Local Cartage Supplemental Agreement negotiated between the union and other signator companies and associations. This collective bargaining agreement provides, in part, that when a house account is lost by LaSalle, truck drivers assigned to that account may follow the account to the new employer or "bump" less senior truck drivers assigned to the original employer's remaining accounts. The agreement provides, in pertinent part:

> Employees of a cartage company on a "House" or "Contract" account which is lost in any manner to another company shall go with the account. If such successor company is not a party to this

Agreement, then the Local Union shall attempt to negotiate for such employees with said successor company. If the successor company does not employ the "House" or "Contract" account drivers, they shall be retained by the Employer in accordance with their company's seniority rights.

Daryl Hampton was employed by LaSalle from November 3, 1980, through April 8, 1983, as a house account driver for Emery Air Freight, one of LaSalle's accounts. On April 11, 1983, LaSalle relinquished its house account with Emery. Consequently, Hampton and approximately 21 other drivers assigned to Emery were laid off as of April 11, 1983. The Emery account was taken over by M.W. Ettinger Transfer Co., another cartage company. Fifteen employees of LaSalle, including Hampton, applied for employment with Ettinger on March 19, 20, or 21, 1983. Ettinger declined to employ Hampton, and on April 12, 1983, Hampton filed for unemployment benefits.

Under the collective bargaining agreement, when work became available, LaSalle was required to recall laid-off employees in the order of their seniority. LaSalle was informed by the union that it expected LaSalle to offer work to drivers previously assigned to the Emery account in accordance with their seniority rights.

Hampton was near the bottom of LaSalle's master seniority list. On April 15, 1983, LaSalle informed Hampton that although work was available for more senior drivers, drivers with less seniority would not be recalled. On June 1, 1983, when Hampton was applying for jobs elsewhere, he learned that a co-employee had received a recall letter from LaSalle. Hampton then called LaSalle and was again informed that no jobs were available.

On or about January 25, 1984, Hampton received a recall letter from LaSalle which stated: "This is a letter of recall under section 43 of the National Master Freight Agreement." Article 43 of that agreement provides in pertinent part:

> In the event of a layoff, an employee so laid off shall be given ten (10) days notice

of recall mailed to his last known address. The employee must respond to such notice within three days after receipt thereof and actually report to work in seven days after receipt of notice unless otherwise mutually agreed to. In the event the employee fails to comply with the above, he shall lose all seniority rights under this Agreement.

Approximately three days after receiving the letter of recall, Hampton contacted LaSalle regarding the recall letter. LaSalle informed Hampton that he was being recalled under the terms of Article 43 of the agreement. Hampton responded that he was going on vacation and would be back in the state in about two to three weeks. During the telephone conversation, no agreement was reached between LaSalle and Hampton to extend the time for starting work.

Hampton failed to report to work within the time provided by the agreement. On or about February 7, 1984, LaSalle sent a letter to Hampton informing him that because he did not respond to the recall letter his name was removed from the seniority list.

In proceedings before a Department referee LaSalle moved to consolidate the claims of all 22 former Emery house account drivers. That motion was granted in part and denied in part by the director of the appellate branch of the Department of Economic Security. In so ruling the director identified four issues. The director determined that the first two issues, having to do with separation, involved identical fact situations and common issues with respect to the 22 claimants and therefore should be consolidated in accordance with Minn.Stat. § 268.10, subd. 3 (Supp.1983). LaSalle's request to consolidate the remaining reemployment issues was denied by the director because the facts pertinent to those issues would necessarily be different as to each claimant.

LaSalle further requested that the Department issue subpoenas requiring all 22 claimants to appear at the hearing on Hampton's claim. In support thereof La-Salle claimed that claimants were "engaged in a concerted effort to refrain from actively seeking work and being able and available for work." That request was denied by a representative of the director on the ground that LaSalle made an insufficient showing of "necessity" for the issuance of the subpoenas.

On review the Commissioner of Economic Security affirmed the director's decision on the consolidation and subpoena issues. The Commissioner further found that no offers of reemployment were made by La-Salle to Hampton on April 11, April 15, April 28, June 7, or August 1, 1983. In so holding the Commissioner rejected La-Salle's argument that on those dates it made "constructive offers of reemployment" by reason of provisions in the collective bargaining agreement relating to seniority, recall, and bumping. The Commissioner found, however, that a suitable offer of reemployment was made to Hampton on January 25, 1984, and that Hampton rejected that offer without good cause. Accordingly, the Commissioner disqualified Hampton from receiving unemployment compensation benefits after January 25, 1984.

## ISSUES

1. Did the claimant fail, without good cause, to accept suitable reemployment offered by the employer?

2. Did the Commissioner rule improperly on the question of consolidation of the cases, thereby depriving the relator of due process of law?

3. Did the Commissioner rule improperly on the request of the employer to issue subpoenas?

## ANALYSIS

### I

This court's scope of review in an Economic Security case is limited:

> The narrow standard of review requires that findings be reviewed in the light most favorable to the decision, and if

there is evidence reasonably tending to sustain them, they will not be disturbed. *White v. Metropolitan Medical Center,* 332 N.W.2d 25, 26 (Minn.1983). Because of this narrow scope of review the court is "not privileged to weigh the evidence and make a determination as to where the preponderance lies." *Nyberg v. R.N. Cardozo & Brother, Inc.,* 243 Minn. 361, 364, 67 N.W.2d 821, 823 (1954). Furthermore, the credibility of witnesses lies within the sole province of the Commissioner and may not be questioned by this court. *Cary v. Custom Coach, Inc.,* 349 N.W.2d 331, 332 (Minn Ct.App.1984).

Minn Stat. § 268.09, subd. 2 (Supp.1983), provides, in pertinent part:

*Failure to apply for or accept suitable work or re-employment.* An individual shall be disqualified for waiting week credit and benefits during the week of occurrence and until four calendar weeks have elapsed following his refusal or failure and he has earned four times his weekly benefit amount in insured work if the commissioner finds that he has failed, without good cause, * * * to accept a base period employer's offer of re-employment offering substantially the same or better hourly wages and conditions of work as were previously provided by that employer in his base period.

■ The burden of proving disqualification of an employee for unemployment compensation benefits is upon the employer. *Marz v. Dept. of Employment Services,* 256 N.W.2d 287, 289 (Minn.1977). An offer of reemployment must be definite and express. *Larson v. Pelican Lake Nursing Home,* 353 N.W.2d 647, 649 (Minn. Ct.App.1984). It may not be indefinite as to time.

■ In this case the record is clear that not only was Hampton not made any express offer of reemployment before January 25, he was told by LaSalle on April 15 and June 1, 1983, that no work was available for him. LaSalle argues, however, that it made "constructive offers of reemployment" on various dates but did not introduce any evidence regarding why the particular dates were significant or in what manner the "constructive offers" were made. By argument on appeal LaSalle cites the collective bargaining agreement and argues that the agreement constitutes a continuing, ongoing offer of reemployment by virtue of provisions pertaining to seniority, recall, and bumping. Whether the agreement provides for continuous employment, without a separation, is an issue currently being addressed in the consolidated proceeding within the Department of Economic Security on the separation issue.

■ This novel argument flies in the face of the purposes of the unemployment compensation law. To state that because an agreement provides for the future rehire of employees at some indefinite time based on their seniority with the company, the individual employee has received a constructive offer of employment which disqualifies him from receiving benefits would make a mockery of a law that provides for compensation to be paid to employees who are unemployed through no fault of their own.

LaSalle argues that the facts of this matter are analogous to the facts in cases outlining a "constructive voluntary quit doctrine" (union member bumped by more senior union member deemed to have voluntarily terminated employment). *Jansen v. Peoples Electric Company, Inc.,* 317 N.W.2d 879 (Minn.1982); *Anson v. Fisher Amusement Corp.,* 254 Minn. 93, 93 N.W.2d 815 (1958). This doctrine has never gained acceptance in Minnesota and was expressly overruled by the Minnesota Legislature. 1983 Minn.Laws, Ch. 372, § 26. To create a new doctrine of a "constructive offer" of reemployment, as LaSalle suggests, by analogy to a disfavored and now inoperative rule would be erroneous.

Because LaSalle has made no showing that any offer of reemployment was made to this claimant between April 11, 1983, and January 25, 1984, the Commissioner is affirmed in her determination that Hampton was not disqualified for that period of time pursuant to the provisions of Minn.Stat.

§ 268.09, subd. 2. There is adequate evidence in the record to sustain the determination by the Commissioner that Hampton was given an offer of reemployment on January 25, 1984, and that he refused that offer by failing to appear for work according to the provisions of the collective bargaining agreement.

## II

Twenty-two former employees of LaSalle made claims for unemployment compensation benefits after LaSalle lost the Emery account. For each of those 22 claimants, there were four issues raised.

The Department of Economic Security consolidated the first two issues for all 22 claimants because the facts and legal issues were identical in each case. The reemployment issues were not consolidated, and separate hearings have been held for each claimant with regard to these issues. LaSalle argues that it was denied due process by the failure of the Department to consolidate hearings on all the issues for all 22 claimants against LaSalle.

■ Minn.Stat. § 268.10, subd. 3 (Supp. 1983), provides that the Commissioner may, within her discretion, consolidate appeals when the same or substantially similar evidence will be presented. The Commissioner's refusal to consolidate the reemployment questions was not an abuse of discretion when the facts with respect to disqualifications would vary from claimant to claimant.

## III

■ LaSalle claims the Commissioner abused her discretion in refusing to issue subpoenas requiring the attendance of the 21 other claimants at the hearing in this matter. Minn.Rules part 3310.4900 provides, in pertinent part:

> Subpoenas to compel the attendance of witnesses or production of records in any proceeding before a referee, appeal tribunal or the commissioner shall be issued by the referee, chairman of an Appeal Tribunal, or the commissioner upon a

showing being made of the necessity therefor by the party applying for the issuance of the subpoenas.

LaSalle's application for subpoenas was denied by a representative of the director of appeal tribunal on the ground that the request was a mere "fishing expedition." In affirming the director's decision the Commissioner noted that the requested subpoenas related to matters involving the separation issues. As none of the requests related to evidence concerning Hampton's alleged rejection of offers of reemployment, the Commissioner appropriately denied LaSalle's application for subpoenas as involving evidence irrelevant to the issues in this case.

## DECISION

We affirm the determination of the Commissioner of Economic Security that claimant Hampton refused an offer of reemployment made on January 25, 1984, and that he is ineligible for the receipt of unemployment compensation benefits from that date, pursuant to Minn.Stat. § 268.09, subd. 2. The Commissioner's refusal to consolidate the hearings on the reemployment issues was not an abuse of discretion and is not disturbed. The Commissioner's refusal to issue subpoenas was proper and is affirmed.

Affirmed.