**Clyde WILLRICH, Relator,**

v.

**TOP TEMPORARY, INC., Respondent,**

**Department of Economic Security, Respondent.**

**No. CO–85–1524.**

Court of Appeals of Minnesota.

Jan. 21, 1986.

Dale E. Beihoffer, Minneapolis, for relator.

David E. Essling, St. Paul, for respondent.

Hubert H. Humphrey, III, Atty. Gen., James P. Barone, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by WOZNIAK, P.J., and FORSBERG, and NIERENGARTEN, JJ., with oral argument waived.

NIERENGARTEN, Judge.

Clyde Willrich seeks review of a determination by the Commissioner of Economic Security that he failed to accept a suitable offer of reemployment. We affirm.

**FACTS**

Clyde Willrich was hired by Top Temporary Inc. in August 1984 to perform temporary work at various plant facilities.

On Friday, March 29, 1985, Willrich accepted a one-day position moving furniture for the Barrett Moving Company. Following the assignment at Barrett Moving, Willrich did not accept any more work from Top Temporary. He applied for unemployment compensation, and a hearing was held to determine his right to benefits.

Top Temporary's assistant manager testified that, pursuant to Barrett Moving's request, Janene Johnson, an employee of Top Temporary, telephoned Willrich on Saturday morning, March 30, to see if he could work for Barrett Moving again on Monday. The "incident report" of this telephone call prepared by Johnson stated that Willrich had been offered work at Barrett Moving for the following Monday, but had declined because he had an appointment and errands. The assistant manager also testified that Willrich would have been told the

Monday assignment at Barrett Moving would involve the same work and the same pay. The assistant manager stated that Johnson would have called Willrich because Barrett Moving had specifically requested the same people who had worked on Friday, and because Willrich would have been particularly valuable, since he had a car and could drive to Eden Prairie, where Barrett Moving was located.

The manager of Top Temporary also testified that Johnson had been instructed to call Willrich on Saturday to offer him work on Monday. Johnson did not appear and testify herself, because she was no longer working for Top Temporary.

Willrich, however, testified that he was never offered work for Barrett Moving on Monday. Rather, he stated:

> I got a call about Saturday, I guess, about 9 o'clock or something, I'm not sure, and she asked me did I want to work that day, you know, three or four hours, so I asked her what did it pay, she said three thirty-five hour, and I told her no, and that was it. You know, I don't know. I never was offered no back to Barrett Moving. Why would I refuse it if I worked there one day, you know?

Upon further examination by the referee, Willrich continued to insist that he had been offered other work on Saturday for less pay and that Johnson had not mentioned the Barrett Moving job.

The referee found Willrich's testimony convincing, and determined that on Saturday, March 30 Top Temporary had offered Willrich employment for a shorter duration and for substantially lower wages than any of his previous employment. Therefore, the referee concluded that Willrich had not been offered "suitable employment" and was eligible for unemployment compensation benefits.

Top Temporary appealed, and a Commissioner's representative reversed, indicating that he did not believe Johnson would have filled out the incident report for the Barrett Moving position if she had offered Willrich a different position instead. The Commissioner's representative also noted that Willrich's testimony did not support the referee's determination of credibility, since it was interspersed with phrases such as "I guess," "I'm not sure," and "I don't know." The Commissioner's representative concluded that on Saturday, March 30 Willrich declined Top Temporary's offer of suitable reemployment at Barrett Moving.

## ISSUE

Did Top Temporary meet its burden of proving that Willrich was offered suitable reemployment with Barrett Moving?

## ANALYSIS

Minn.Stat. § 268.09, subd. 2 provides that an individual is disqualified from receiving unemployment compensation benefits if he has "failed, without good cause * * * to accept a base period employer's offer of re-employment offering substantially the same or better hourly wages and conditions of work as were previously provided by that employer in his base period." Minn.Stat. § 268.09, subd. 2 (1984). An employer has the burden of proving that a definite and express offer of reemployment was made. *LaSalle Cartage Co., Inc. v. Hampton,* 362 N.W.2d 337, 341 (Minn.Ct. App.1985). Whether a suitable offer of employment has been made is a question of fact, *Hogenson v. Brian Knox Builders,* 340 N.W.2d 360, 363 (Minn.Ct.App.1983), involving a determination of credibility. *See Hampton,* 362 N.W.2d at 341. Consequently, the decision of the Commissioner's representative may not be questioned if there is evidence in the record which reasonably tends to sustain his findings. *Id.* at 340–341. It is the decision of the Commissioner's representative which must be reviewed, rather than that of the referee. *Tester v. Jefferson Lines,* 358 N.W.2d 143, 145 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. March 13, 1985).

Willrich argues that the Commissioner's representative erroneously discredited his testimony because the phrases "I guess," "I'm not sure," and "I don't know" although equivocal, are phrases which, when read in context, do not detract from the credibility of his statements.

While Willrich's argument has some merit, the Commissioner's representative did

not base his decision solely upon the equivocal testimony; in addition, he noted that the incident report signed by Johnson completely supported Top Temporary's testimony. The Commissioner's representative explained:

> It is clear on its face that such entry was made at the time of the call and in the course and scope of the employer's business. As such, it is a business record which should be given evidentiary weight as credible hearsay.[1] Because it is a record on which the employer relied in conducting its daily business we consider its contents to be truthful because it would make no sense * * * to offer the claimant one job assignment but then list another totally different assignment offer on its own business records.

## DECISION

The incident report, in conjunction with the testimony of Top Temporary's manager and assistant manager, supports the decision of the Commissioner's representative that Willrich was offered and declined a suitable offer of reemployment at Barrett Moving.

Affirmed.

1. Technical rules of evidence need not be followed in Department of Economic Security proceedings, Minn.Stat. § 268.10, subd. 6 (1984); therefore, the Commissioner's representative may rely upon evidence consisting of hearsay.

*Vang v. A–1 Maintenance Service,* 376 N.W.2d 479, 482 (Minn.Ct.App.1985).