Robert A. **HULING**, Relator,

v.

**STEMM TRANSFER & STORAGE, INC.,** Commissioner of Jobs and Training, Respondents.

No. C1–87–418.

Court of Appeals of Minnesota.

Sept. 1, 1987.

Martin J. Costello, Carol A. Baldwin, Peterson, Bell, Converse & Jensen, St. Paul, for relator.

Frank J. Kundrat, Jr., Hall, Byers, Hanson, Steil & Weinberger, St. Cloud, Hubert H. Humphrey, III, State Atty. Gen., Donald V. Notvik, Sp. Asst. Atty. Gen., St. Paul, for respondents.

Heard, considered and decided by HUSPENI, P.J., and WOZNIAK and CRIPPEN, JJ.

## OPINION

WOZNIAK, Judge.

Relator Robert Huling appeals from a determination that he engaged in misconduct during a strike against his employer. We affirm.

### FACTS

Robert Huling worked for respondent Stemm Transfer and Storage, Inc. (Stemm) as a warehouseman and driver from 1962 until April 16, 1986.

On April 17, 1986, Stemm's drivers went on strike. Huling participated in the union's picketing activities and, according to Stemm, engaged in conduct which could not be excused as normal picket line activity. When Stemm and the union negotiated a strike settlement on August 29, 1986, it was agreed that Huling would not be rehired, due to his actions during the strike.

Huling's claim for unemployment compensation benefits was denied on the basis that he had been discharged for misconduct. He appealed to a referee, who took testimony from the parties and several witnesses. Stemm's president and three employees testified on behalf of Stemm. One of those employees was Scott Neaters, a driver who did not participate in the strike. He testified that one morning in May 1986, he was driving a Stemm truck to Sauk Rapids when he noticed Huling and another man following him in Huling's car. When Neaters stopped his truck in Sauk Rapids and went into a convenience store, he looked out a window to see what the two men were doing. Both men ran over to his trailer, and he saw Huling stick an object into one of the tires, which immediately went flat. While Huling attempted to demonstrate that Neaters could not have seen him stick the tire or distinguish which man

actually did it because of distance and being on the other side of the trailer, Neaters explained that he could see Huling through the tires. Neaters called the police to report the incident, and pulled his trailer back to Stemm with one flat tire.

Tony Zehrer, a replacement driver hired during the strike, testified that on one occasion while he was in a truck and was backing it into a customer's plant, Huling began repeatedly kicking at his front wheel. Shortly thereafter, Zehrer noticed the oil plug from that wheel lying on the road. Although he did not see exactly how the plug came out, he stated that, apart from the repeated kicking that day, "there was no other way for something like that to fall out." Huling himself testified that an oil plug fits very tightly, and Zehrer testified that if he had not noticed the oil plug on the ground, the oil for the front wheel bearing could have drained out, ruining the bearing. He also testified that the wheel could have fallen off and he could have been killed.

Huling admitted he had followed Neaters to Duluth and Sauk Rapids, but denied damaging his tire. He also admitted he had followed Zehrer around, but claimed he had never kicked Zehrer's tire.

In addition to the above testimony, Stemm offered evidence of other misconduct by Huling, which is unnecessary to discuss here. Following the hearing, the referee determined that Huling had engaged in misconduct, and affirmed the denial of unemployment compensation benefits. On appeal, a Commissioner's representative affirmed.

### ISSUE

Does the record support the Commissioner's conclusion that Huling engaged in misconduct disqualifying him from the receipt of unemployment compensation benefits?

### ANALYSIS

In questions involving unemployment compensation, an employee who is on strike is not considered to have quit his employment; rather, the employer-employee relationship continues. *Ayers v. E.F. Johnson Co.*, 244 Minn. 375, 380, 70 N.W.2d 296, 299 (1955). During the course of the strike, the employee is disqualified from receiving unemployment compensation benefits, but if, upon the conclusion of the strike, he is not reemployed, he is entitled to receive unemployment compensation benefits unless for some reason he is disqualified from receiving those benefits. *See Ayers;* Minn.Stat. § 268.09, subd. 3 (1986). As in other situations, where strike-related conduct is involved, the employer has the burden of proving that the employee's actions disqualified him from receiving benefits. *Johnson v. Ford Motor Co.*, 289 Minn. 388, 394, 184 N.W.2d 786, 790 (1971).

"Misconduct" has been defined as follows:

> [T]he intended meaning of the term 'misconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct'.

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973).

Huling claims that Stemm did not meet its burden of demonstrating that his actions constituted misconduct within the meaning of *Tilseth.* Huling first argues that the referee and Commissioner's representative failed to adequately consider the fact that two of the three employees who testified were replacement drivers, whose jobs depended on Huling's termination. This claim turns upon the credibility of the witnesses; consequently, the decision of the Commissioner's representative will not be overturned if there is evidence in the record which reasonably tends to sustain

his findings. *LaSalle Cartage Co., Inc. v. Hampton*, 362 N.W.2d 337, 340–41 (Minn. Ct.App.1985). Here, the record contains such evidence. In fact, many of Huling's arguments turn upon the credibility of Stemm's witnesses. These arguments must fail, since each of the Commissioner's findings is amply supported by the record.

Huling attempts to distinguish this case from *Tester v. Jefferson Lines*, 358 N.W.2d 143 (Minn.Ct.App.1984), which also involved a strike situation. There, we affirmed the denial of unemployment compensation benefits, stating:

> The employer had a right to expect Tester to refrain from uttering unprovoked obscenities and from actively obstructing the employer's buses.
>
> We cannot bring either the obscene comment or blocking of the bus under the isolated hotheaded incident exception to the misconduct definition.
>
> \* \* \* \* \* \*
>
> The strike was not against Tester's employer, and his conduct cannot be excused as normal picket-line activity. Because both incidents occurred in the presence of other employees and could have incited other aggressive behavior, they were likely to interfere with the employer's business.

*Id.* at 145–46 (citations omitted).

Here, as in *Tester*, there is no evidence and no claim that Huling's conduct was an isolated "hotheaded" incident. *Tester* similarly involved physical conduct. The Commissioner's representative found, and the record discloses, that Huling kicked and punctured the tires of two vehicles. This exhibition of hostile and even dangerous conduct, as in *Tester*, "cannot be excused as normal picket line activity."

### DECISION

Huling's conduct during a strike against Stemm constituted disqualifying misconduct.

Affirmed.