James **MEEHAN**, Relator,

v.

**LULL CORPORATION and Commissioner of Jobs and Training, Respondents.**

No. C0–90–2199.

Court of Appeals of Minnesota.

Feb. 19, 1991.

Review Denied April 18, 1991.

James Meehan, St. Paul, pro se.

Nick J. Thiros, Cohen & Thiros, Merrillville, Ind., Robert C. Hoene, Robert C. Hoene, P.A., St. Paul, for Lull Corp.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Jobs and Training.

Considered and decided by PARKER, P.J., and FOLEY and KLAPHAKE, JJ.

## OPINION

PARKER, Judge.

Relator James Meehan obtained a writ of certiorari, seeking review of a decision by the Commissioner of Jobs and Training which denied his claim for unemployment compensation. On appeal Meehan argues he did not commit misconduct by drafting a newsletter critical of his employer, respondent Lull Corporation. We agree with Meehan that his mere stated intent to publish the newsletter did not constitute misconduct disqualifying him from receiving benefits.

## FACTS

Meehan was employed as a machinist by Lull Corporation; he was also a union shop steward.

On March 12, 1990, Meehan delivered, he asserts, a sealed package to Lull's senior vice president, Carl Wright, containing a draft of a newsletter Meehan had prepared and written. The newsletter was entitled "Lulu Land, A Manufacturing Fantasy World." The newsletter included an editorial criticizing Lull's management policies, referring to its treatment of employees as "human sewage," and suggesting the corporation was "brain dead." In an attached cover letter, Meehan stated:

These are the first three pages of the Lull newsletter. The fourth page has been omitted for now and has been reserved for your reply. Printing will commence at 2:00 p.m. on Wednesday [March 14] for distribution on Thursday [March 15].

On March 13, 1990, Wright prepared a memo to all Lull employees addressing Meehan's proposed newsletter and stating that a copy of it would be posted for any employee to read. Wright's memo suggested that any other employees who were dissatisfied with conditions at Lull should air their grievances through proper union channels.

Meehan prepared a final revision of his newsletter which was much less inflammatory than the first draft. Specifically, the revised newsletter did not employ the phrases "human sewage" or "brain dead." However, the fourth page of the newsletter stated that future newsletter topics might include confidential or proprietary information about Lull.

On March 15, 1990, Lull's personnel manager, Bob Braatz, sent Meehan a letter discharging him from employment. The letter discussed Meehan's newsletter and indicated that Meehan's actions had prompted review of his personnel file.

Upon his discharge, Meehan applied for unemployment compensation, but the Department of Jobs and Training denied his claim, determining that he had committed disqualifying misconduct by threatening to publish and then publishing his unauthorized newsletter.

Meehan appealed to a Department referee, who conducted a hearing. Following the hearing, the referee issued a decision affirming the initial denial of benefits. The referee reasoned that Meehan was discharged because he prepared and published the newsletter and threatened to publish subsequent newsletters addressing confidential business matters. The referee found that Meehan was also discharged because he had provided Lull with false information on his employment application.

Meehan appealed to a Commissioner's representative, who reversed the referee's

factual findings. The representative concluded that Meehan was discharged as a result of his threats to publish the newsletter, which constituted misconduct.

## ISSUES

1. Does the record support the Commissioner's finding that Meehan was discharged because of his threat to publish the newsletter?

2. Did Meehan's threat to publish the newsletter constitute misconduct?

## DISCUSSION

### I

Meehan argues the Commissioner's representative erred by determining that he was dismissed because of his publication of the newsletter. Rather, Meehan claims he was discharged because of allegations that he lied on his employment application.

■ The cause of an employee's separation is a question of fact. *See Harringer v. AA Portable Truck & Trailer Repair, Inc.*, 379 N.W.2d 222, 224 (Minn.App.1985). Our review of the Commissioner's factual findings is narrow; we will review the findings to determine whether there is evidence reasonably tending to support them. *White v. Metropolitan Medical Center,* 332 N.W.2d 25, 26 (Minn.1983).

■ There is evidence to support the Commissioner's finding that Meehan was discharged because of his threatened publication of the newsletter. In his letter discharging Meehan, Bob Braatz indicated that Meehan was being held accountable for his threats to publish the statements in the proposed newsletter. In addition, a letter from Braatz to the Department suggests that the publication of the newsletter was a circumstance leading to Meehan's discharge. Further, at the hearing Meehan began his testimony by discussing the newsletter, suggesting that Meehan himself was aware that the newsletter was one basis upon which he was discharged. Braatz' testimony also indicated that the newsletter was a factor leading to Meehan's discharge. This court reviews the

findings of the Commissioner's representative, not those of the referee. *Tester v. Jefferson Lines*, 358 N.W.2d 143, 145 (Minn.App.1984), *pet. for rev. denied* (Minn. Mar. 13, 1985) (citing *Chellson v. State Division of Employment & Security*, 214 Minn. 332, 335, 8 N.W.2d 42, 44 (1943)).

### II

■ The unemployment statutes are humanitarian in nature and are to be liberally construed in favor of awarding benefits. *See Tuma v. Commissioner of Economic Security*, 386 N.W.2d 702, 706 (Minn.1986). Accordingly, the burden is on an employer to prove by the greater weight of the evidence that an employee committed misconduct disqualifying him from receiving unemployment benefits. *See Lumpkin v. North Central Airlines, Inc.*, 296 Minn. 456, 459, 209 N.W.2d 397, 400 (1973).

■ Once the facts are determined, the question of whether an employee committed misconduct is ultimately one of law. *See Colburn v. Pine Portage Madden Bros.*, 346 N.W.2d 159, 161 (Minn.1984). The court need not defer to the Commissioner's legal conclusions. *Talberg v. Commissioner of Economic Security*, 370 N.W.2d 686, 688 (Minn.App.1985).

"Misconduct" has been defined as

conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct."

*Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (quoting *Boynton Cab. Co. v. Neubeck,* 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)). We believe the Commissioner's representative erred as a matter of law by concluding that Meehan's "threat" to publish his newsletter was encompassed by the above definition.

We note initially that Meehan sent one copy of his proposed newsletter privately to a senior vice president for his personal review. It was the vice president, not Meehan, who then immediately published the proposed newsletter. The vice president, not Meehan, posted a copy of the newsletter for other employees to read. Only later did Meehan publish a more subdued version.

The basis upon which Meehan was found by the Commissioner to have been discharged—his threat to publish his newsletter—did not constitute the type of conduct contemplated by the *Tilseth* definition. Although Lull may have had good cause to discharge Meehan for his threats, we must decide separately whether those threats constituted misconduct for unemployment benefits purposes. *See Windsperger v. Broadway Liquor Outlet,* 346 N.W.2d 142, 143 (Minn.1984). We are unconvinced that a mere statement of intended misconduct, without more, is the type of "willful," "wanton" or "equally culpable" conduct intended by *Tilseth.*

We caution that there will undoubtedly be exceptions to this rule; i.e., where an employee's threat involves extortion, violence,[1] or the revelation of proprietary or confidential secrets. Indeed, we note that if Meehan's draft newsletter had included the threats which he later incorporated in his revised newsletter, our decision today may have been different. However, as the Commissioner's decision recognizes, Lull did not base its decision to fire Meehan on the final revised newsletter; the discharge was based upon the threatened publication of the initial draft.

[1]. *See, e.g., Wegleitner v. White Castle Systems, Inc.,* No. C9-88-2573, 1989 WL 41796 (Minn.

Because we reverse the Commissioner on this issue, we need not address Meehan's remaining arguments.

## DECISION

The Commissioner's representative erred by concluding that Meehan's threat to publish his newsletter constituted misconduct.

Reversed.