*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1380**

Mikel Thorstenson,
Respondent,

vs.

Waterford Oil Co., Inc.,
Relator,

Department of Employment and Economic Development,
Respondent.

**Filed April 11, 2016
Affirmed
Smith, Tracy, Judge**

Department of Employment and Economic Development
File No. 33575864-3

Jason S. Raether, John J. Steffenhagen, Hellmuth & Johnson, PLLC, Edina, Minnesota (for relator)

Lee B. Nelson, St. Paul, Minnesota (for respondent Department)

Mikel Thorstenson, Spring Valley, Minnesota (pro se respondent)

        Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Smith, Tracy, Judge.

UNPUBLISHED OPINION

**SMITH, TRACY**, Judge

Relator Waterford Oil Company (Waterford) appeals an unemployment-law judge's (ULJ) decision that respondent Mikel Thorstenson did not engage in employment misconduct rendering him ineligible for unemployment benefits. Because we conclude that the ULJ's findings are substantially supported by the evidence, the ULJ did not err as a matter of law in determining eligibility, and the ULJ conducted a fair hearing, we affirm.

## FACTS

Waterford hired Thorstenson on March 10, 2015, as a fuel-delivery driver. During the pre-hire interview, Waterford's vice president, Mike Lynch, told Thorstenson several times that the position required him to drive a nine-speed manual-transmission truck. Thorstenson stated that he would have no problem driving the truck because he had driven a nine-speed manual at a previous job in early 2015. Thorstenson had the appropriate driver's license and endorsements to drive the truck, but he would have to pass a mandatory driver's safety test for hazardous-material carriers.

After he was hired, Thorstenson underwent training at Waterford. During the training period, and while he was a passenger in the truck, Thorstenson fell asleep on a number of occasions. He did not fall asleep when he was behind the wheel. Thorstenson drove the truck approximately 100 miles during training.

Alex Wiese, Waterford's lead driver, rode with Thorstenson during his training and came to the conclusion that Thorstenson was not acceptably adept at driving the truck. Thorstenson was able to drive the truck but had problems changing gears and driving in

reverse. He also stalled the truck. Waterford believed that Thorstenson would be unable to pass the mandatory driver's safety test for hazardous-material carriers and discharged Thorstenson on March 31, 2015.

Thorstenson then applied and was determined eligible for unemployment benefits. Waterford appealed that determination to respondent Minnesota Department of Employment and Economic Development (DEED). A ULJ held an evidentiary hearing on the issue of whether Thorstenson was discharged for disqualifying misconduct. Thorstenson and Waterford appeared without counsel. Waterford maintained that Thorstenson made material misrepresentations during his interview and that he slept on the job. The ULJ questioned both parties and gave the parties opportunities to question each other.

On June 1, 2015, the ULJ issued a decision, determining that Thorstenson was not discharged for misconduct and was therefore eligible for benefits. The ULJ found that Thorstenson did not lie about his driving ability but thought that, based on his previous experience, he possessed sufficient driving skills. The ULJ further found that Thorstenson could drive the truck, just not to Waterford's expectations. The ULJ found Thorstenson credible because his testimony was "consistent, seemed more likely under the circumstances and followed a more logical chain of events."

Waterford requested reconsideration of the ULJ's decision, challenging the ULJ's credibility determinations and arguing that the ULJ should have considered Thorstenson's sleeping on the job as a basis for termination. After reconsideration, the ULJ found that

3

Thorstenson's driving, not his sleeping on the job, was the actual reason for termination and affirmed the earlier decision that Thorstenson did not lie about his driving ability.

Waterford appeals.

## DECISION

Waterford appeals, by petition for a writ of certiorari, the ULJ's determination that Thorstenson did not engage in disqualifying misconduct. We may reverse or modify a ULJ's decision if the relator's substantial rights may have been prejudiced because, among other things, the ULJ's decision is affected by an error of law or unsupported by substantial evidence in view of the entire record. Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015).

An employee discharged for employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). Whether an employee committed employment misconduct presents a mixed question of fact and law. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). "Whether the employee committed a particular act is a question of fact." *Id.* We review a ULJ's factual findings "in the light most favorable to the decision" and will not disturb findings that are substantially supported by the record. *Id.* Whether a particular act constitutes disqualifying misconduct is a question of law, which we review de novo. *Id.* We defer to a ULJ's credibility determinations. *Id.*

## I.

Waterford argues that the ULJ erred in not finding employment misconduct. "Employment misconduct means any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior

4

the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." Minn. Stat. § 268.095, subd. 6(a) (2014). Waterford argues that Thorstenson engaged in two types of misconduct—sleeping on the job and pre-hire misrepresentation.

**A.    Sleeping on the Job**

Waterford argues that the factual finding on reconsideration that Thorstenson fell asleep on the job required the legal conclusion of disqualifying misconduct. Misconduct that is not the basis for termination, however, is not disqualifying misconduct. *See Harringer v. AA Portable Truck & Trailer Repair, Inc.*, 379 N.W.2d 222, 224 (Minn. App. 1985) (noting that "an employee's misconduct is irrelevant to a determination of unemployment compensation benefits if that conduct was not in fact the reason for the employee's discharge").

Here, the ULJ originally found that Thorstenson's poor driving was the reason for discharge. In the order of affirmation, the ULJ acknowledged that Thorstenson fell asleep during training but rejected Waterford's request to consider Thorstenson's sleeping as the reason for discharge. "The cause of an employee's separation is a question of fact." *Meehan v. Lull Corp.*, 466 N.W.2d 14, 16 (Minn. App. 1991), *review denied* (Minn. Apr. 18, 1991). Accordingly, we will not disturb the ULJ's determination that Thorstenson's driving led to his discharge if the finding is substantially supported by the record. *See Skarhus*, 721 N.W.2d at 344 "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, or more than a

5

scintilla of evidence." *Moore Assocs., LLC v. Comm'r of Econ. Sec.*, 545 N.W.2d 389, 392

(Minn. App. 1996) (quotation omitted).

The ULJ questioned Waterford's vice president, Lynch, about the reason for

Thorstenson's termination:

> [ULJ]: In a brief sentence or sentences will you state the reason
> or reasons for the discharge and then we'll get to testimony
> about that specifically.
> [LYNCH]: Okay, there's a bunch of different things but the
> primary reason [is] when he was hired he was basically on a
> probationary that he had to pass a federal driver[']s exam
> before he's allowed to transport hazardous materials. And
> therefore he could not drive, and therefore I could not pass him
> on the exam and that is why he lost his job.
> . . . .
> [LYNCH]: The primary reason, forget about anything else, the
> primary reason for loss of employment [is because] there's a
> Minnesota statute that I have, he has to pass the driver
> certificate and he can't do it.
> [ULJ]: I see, so that's the real reason he was discharged, is that
> correct?
> [Lynch]: Yeah, just stick with that.
> [ULJ]: Okay, then we won't go into any other reasons, we've
> clarified that.

The timing of the discharge supports the finding that Thorstenson's driving, not

sleeping on the job, was the actual reason. The evidence shows that Waterford did not

immediately discharge Thorstenson when he fell asleep while a passenger during training.

Rather, Waterford continued Thorstenson's training, and it was not until after Thorstenson

was behind the wheel that Waterford decided to terminate his employment.

The record substantially supports the ULJ's finding that Thorstenson's driving, not

sleeping, constituted the reason for discharge. We will not disturb the ULJ's well-

supported finding. *See Skarhus*, 721 N.W.2d at 344. Because sleeping on the job was not

6

the actual reason for termination, we do not address Waterford's argument that Thorstenson's sleeping as a matter of law would constitute disqualifying misconduct. *See Harringer*, 379 N.W.2d at 224.

## B.     Pre-Hire Misrepresentation

Waterford contends that Thorstenson made disqualifying material misrepresentations during his interview. "A person making a material misrepresentation during the hiring process is . . . ineligible for unemployment benefits if he or she is later discharged because of the misrepresentation." *Santillana v. Cent. Minn. Council on Aging*, 791 N.W.2d 303, 307 (Minn. App. 2010). Waterford's argument questions the ULJ's credibility determinations, factual findings about Thorstenson's pre-hire interview, and legal conclusion that Thorstenson's interview statements did not constitute employment misconduct.

Waterford argues that we should reverse the ULJ's determination that Thorstenson was more credible than Waterford's representatives. "When the credibility of a witness testifying in a hearing has a significant effect on the outcome of a decision, the [ULJ] must set out the reason for crediting or discrediting that testimony." Minn. Stat. § 268.105, subd. 1a(a) (2014). We defer to a ULJ's credibility determinations, *Skarhus*, 721 N.W.2d at 344, and will affirm if the ULJ "provide[s] the statutorily required reason for [his] credibility determination," *see Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 533 (Minn. App. 2007).

The ULJ found that Thorstenson's testimony was "consistent, seemed more likely under the circumstances and followed a more logical chain of events." In contrast, the ULJ

7

found that Waterford's representatives' testimony was "inconsistent and appeared to be exaggerated and overly misleading." Accordingly, the ULJ concluded that Waterford's claim that Thorstenson lied during his pre-hire interview was "not credible."

Determining credibility in the face of conflicting testimony is "the exclusive province of the ULJ." *Skarhus*, 721 N.W.2d at 345. We have thoroughly reviewed the transcript. The ULJ heard testimony from both parties and noted the inconsistencies and exaggerations in the testimony from Waterford's representatives. We see no reason to disturb the ULJ's credibility determination. *See Ywswf*, 726 N.W.2d at 533.

Waterford also argues that the ULJ's factual findings were unsupported by the evidence. The ULJ found that Waterford explained several times to Thorstenson that he would be driving a nine-speed manual-transmission truck, that Thorstenson "indicated [this] . . . would not be an issue for him," and that Thorstenson "believed that his prior [driving experience] was sufficient."

As noted above, the ULJ exercised his discretion to discredit Waterford's claim that Thorstenson lied during the pre-hire interview. Moreover, the record substantially supports the ULJ's findings on Thorstenson's statements. Lynch testified that he asked Thorstenson multiple times if Thorstenson could drive a nine-speed manual-transmission truck. Thorstenson testified that he told Lynch that he could drive the truck based on his previous experience. Lynch felt that Thorstenson had "lied" to him and that Thorstenson "just couldn't drive." But Wiese later clarified that Thorstenson had driven the truck approximately 100 miles during training and had "[s]ome sort" of experience, but that

8

Thorstenson lacked the degree of driving expertise that Waterford expected. We see no reason to disturb the ULJ's findings. *See Skarhus*, 721 N.W.2d at 344.

Waterford argues that, as a matter of law, the ULJ should have found a disqualifying misrepresentation since the ULJ found that Thorstenson was not able to drive the truck to Waterford's expectations despite his having represented in his interview that he would not have an issue driving the truck. Thorstenson may have overestimated the driving skills he had developed with his previous employer. His overestimation, however, does not amount to a disqualifying misrepresentation of material fact. "[S]imple unsatisfactory conduct" or "conduct that was a consequence of the applicant's inability or incapacity" does not amount to disqualifying misconduct. Minn. Stat. § 268.095, subd. 6(b)(3), (5) (2014). The ULJ did not err in concluding that, while Thorstenson's driving failed to live up to Waterford's expectations, he did not engage in disqualifying misconduct in the interview. *See id.*

**II.**

Waterford also argues that the ULJ failed to conduct a fair hearing and requests that we remand for further proceedings. A ULJ must conduct the hearing "as an evidence-gathering inquiry." Minn. R. 3310.2921 (2015). The ULJ must assist parties with presenting their evidence and "must ensure that all relevant facts are clearly and fully developed." *Id.* But "like all judicial and quasi-judicial fact-gathering endeavors, [the hearing] is still adversarial and requires the [ULJ] to maintain neutrality to assure fairness to all parties." *Stassen v. Lone Mountain Truck Leasing, LLC*, 814 N.W.2d 25, 32 (Minn. App. 2012).

9

Waterford contends that the ULJ failed to adequately develop the record about the expectations it expressed during Thorstenson's interview. The ULJ questioned Lynch about Thorstenson's pre-hire interview five times, heard Lynch testify that he repeatedly explained the importance of driving a nine-speed manual-transmission truck, and made no attempt to stop testimony about Thorstenson's pre-hire interview. Furthermore, the ULJ questioned Thorstenson about the interview two times. Based on this questioning, the ULJ found that Lynch explained several times to Thorstenson that the job required driving a nine-speed manual-transmission truck. Waterford had multiple opportunities to bring any of its other expectations to the ULJ's attention but did not do so. The ULJ adequately developed the record on Waterford's expectations.

Waterford also argues that the ULJ failed to develop the record on Thorstenson's understanding of his driving ability in relation to Waterford's expectations. Waterford's argument rests on an incomplete portrayal of the hearing. The ULJ inquired about Thorstenson's previous driving experience and gave Waterford an opportunity to question Thorstenson on this point. The ULJ also elicited specific facts and made corresponding findings about Thorstenson's previous driving experience including its length of time, temporal proximity, location, that it had been Thorstenson's first experience driving a nine-speed manual-transmission truck, and that he was able to drive well enough to make deliveries for his previous employer. We see no failure to develop the record on Thorstenson's understanding of his driving ability.

Waterford's final contention is that the ULJ failed to develop the record regarding whether Thorstenson's sleeping was a factor in Waterford's termination decision. The ULJ

10

thoroughly questioned Lynch before concluding that Thorstenson's driving was the reason for his termination. Additionally, the ULJ heard testimony from Waterford's representatives and Thorstenson about his sleeping during training, and allowed Waterford to question Thorstenson on that point. In the order of affirmation, the ULJ explained that, in light of the entire record, sleeping was not the reason for Thorstenson's termination. The ULJ did not fail to develop the record on Thorstenson's sleeping.

In sum, the ULJ questioned both parties regarding the relevant issues, gave Waterford the opportunity to question Thorstenson, and did not limit the testimony of Waterford's representatives. "The ULJ met [his] obligation to assist [Waterford] without losing sight of the neutrality of [his] role." *See id.*

**Affirmed.**