John STASSEN, Relator,

v.

LONE MOUNTAIN TRUCK LEASING, LLC, Respondent,

Department of Employment and Economic Development, Respondent.

No. A11–954.

Court of Appeals of Minnesota.

March 5, 2012.

---

John Stassen, Inver Grove Heights, MN, pro se relator.

Lone Mountain Truck Leasing, LLC, Omaha, NE, respondent employer.

Lee B. Nelson, Amy R. Lawler, Department of Employment and Economic Development, St. Paul, MN, for respondent Department.

Considered and decided by ROSS, Presiding Judge; KALITOWSKI, Judge; and MINGE, Judge.

## OPINION

ROSS, Judge.

An accounts-payable collector, John Stassen, was so upset after his supervisor honored a customer's request to be trans-

ferred to a different collector because of Stassen's rudeness that he sent an email message to his supervisor declaring his "assurance that [he] will be happy to continue in [his] capacity as long as [several managers] would like so that there's no interruption or difficulty as [he] transition[s] out of LMTL's employ," adding, "If they would be comfortable with a decision ... to sever immediately, so be it." Stassen's employer accepted the email as his resignation. He now challenges an unemployment law judge's (ULJ) decision that he is disqualified from receiving unemployment benefits because he quit his employment. He argues specifically that the ULJ lacked jurisdiction to hear the case, that his employer actually discharged him, and that he did not receive a fair evidentiary hearing. We hold that the ULJ had jurisdiction to hear the case because the statutory twenty-day appeal period did not begin to run when the Minnesota Department of Employment and Economic Development (DEED) mailed its original determination that Stassen was eligible for unemployment benefits to the employer's wrong address. The evidence also supports the ULJ's finding that Stassen quit his employment but does not support his contention that he received an unfair hearing. We therefore affirm.

### FACTS

John Stassen worked as a part-time collector for Lone Mountain Truck Leasing and had been the subject of multiple complaints for disrespectful and aggressive behavior toward customers. In May 2010 Stassen's supervisor granted a customer's request to be transferred to a different collector. Stassen responded with an email complaining that the supervisor had handled the customer complaint poorly. Stassen concluded the email with the statements that he now contends Lone Mountain misinterpreted as announcing his resignation:

> Since Wayne has been more than fair with me for the 6 years or so that I've been in his employ, pls [sic] accept this e-mail as my assurance that I will be happy to continue in my capacity as long as he, Joe, and Andy would like so that there's no interruption or difficulty as I transition out of LMTL's employ.
>
> If they would be comfortable with a decision is [sic] to sever immediately, so be it.
>
> While I have diligently and effectively met my responsibilities, including strict compliance with new company policies, for the entire time I've worked for Wayne's firms, there have been several matters in recent weeks between you and me that make continuing on extremely unpleasant.
>
> Here's wishing Wayne, Joe, and Andy well—it has been a real trip!!

When Lone Mountain's human resources director received a copy of the email, she telephoned Stassen and told him that Lone Mountain had accepted his resignation. Stassen told her that the email was not a resignation. The next day, Lone Mountain sent Stassen a letter confirming that it had accepted his resignation. Stassen sent two emails denying that his original email was his resignation. He retained an attorney, who sent a letter to Lone Mountain also denying that Stassen had resigned. Lone Mountain nevertheless continued to treat the email as a resignation letter and to refuse to allow Stassen to rescind. Stassen and Lone Mountain eventually entered into a settlement agreement under which Lone Mountain paid Stassen $10,155 as severance pay with an additional $10,155 for nonwage injuries.

Stassen applied to DEED for unemployment benefits. On July 13, 2010, a department adjudicator determined that Stassen

was eligible for benefits and attempted to mail a copy of that determination to Lone Mountain. It did so by sending it to Lone Mountain's address in the department's electronic database.

On January 6, 2011, Lone Mountain filed an agency appeal with DEED, representing that it had only recently become aware of the determination because it had been mailed to the company's former address rather than its current address. An unemployment law judge (ULJ) dismissed Lone Mountain's appeal as untimely because it was not filed within twenty calendar days from the date of mailing as required by Minnesota Statutes section 268.101, subdivision 2(f) (2010).

Lone Mountain requested reconsideration. The ULJ reversed his earlier decision, finding that DEED had not sent the determination to Lone Mountain's current mailing address due to departmental error, and he reasoned that the appeal period had therefore never begun. A second ULJ then conducted a de novo hearing, finding that Stassen quit his employment and was therefore ineligible to receive unemployment benefits. Stassen filed a request for reconsideration and asked that a different ULJ handle it. A third ULJ considered Stassen's reconsideration request and affirmed the second ULJ's decision. That final decision included a finding that Stassen had been overpaid $10,179 in unemployment benefits. Stassen appeals by certiorari.

## ISSUES

I. Was the second ULJ barred from considering Lone Mountain's appeal because it was untimely?

II. Did the ULJ err by determining that Stassen quit his employment with Lone Mountain?

III. Did Stassen receive a fair hearing?

## ANALYSIS

### I

██ Stassen first argues that the second ULJ exceeded her jurisdiction when she decided the question of resignation on the merits because, he maintains, Lone Mountain's appeal from the original determination of Stassen's eligibility to receive benefits was untimely. When reviewing a ULJ's decision, we may affirm the decision, remand for further proceedings, or reverse or modify the decision if the substantial rights of the relator have been prejudiced. Minn.Stat. § 268.105, subd. 7(d) (2010). An agency decision of whether to dismiss an appeal as untimely is a question of law, which we review de novo. *Kennedy v. Am. Paper Recycling Corp.*, 714 N.W.2d 738, 739 (Minn.App.2006).

██ Stassen argues that the second ULJ lacked jurisdiction to decide the merits of whether he is eligible for benefits because Lone Mountain failed to file an appeal within twenty days. An eligibility determination in the employee's favor becomes final unless an employer files an appeal within twenty days after the department sends it notice of the determination. Minn.Stat. § 268.101, subd. 2(f). An untimely appeal from a determination must be dismissed for lack of jurisdiction. *Kennedy*, 714 N.W.2d at 740. The employer has the duty to register with the department's commissioner by submitting its physical address. Minn.Stat. § 268.042, subd. 1(a) (2010). The department sends its required notices and determinations by mail to the employer's last known address. Minn.Stat. § 268.032(b) (2010).

██ The date of the notice's mailing, not its receipt, generally commences the appeal time period. *Smith v. Masterson Pers., Inc.*, 483 N.W.2d 111, 112 (Minn.

App.1992). Although the time limit for appeal is absolute, *Johnson v. Metropolitan Medical Center,* 395 N.W.2d 380, 382 (Minn.App.1986), if the department fails to mail the notice, the time limit is not triggered. *Mgmt. Five, Inc. v. Comm'r of Jobs & Training,* 485 N.W.2d 323, 324 (Minn.App.1992). This case presents a question of first impression, which is whether a mailing by the department to a wrong address constitutes effective notice for the purpose of triggering the deadline when the department caused the address error.

We first consider Stassen's challenge to the premise that the mistake was the department's. He argues that Lone Mountain is responsible for the error because it failed to correctly update its address on the department's website, leading to the department's mailing to the wrong address. This issue hangs substantially on the ULJ's fact finding, which is entitled to our deference. The ULJ found that Lone Mountain properly updated its address in 2008 and that the department failed to mail the determination to Lone Mountain's last known address. The finding is supported by the record. In 2008 Lone Mountain updated its mailing address using the department's website, as required by statute. It successfully changed its primary mailing address on the website page entitled "address historical information." Lone Mountain's only failure is that it did not additionally change its address on a different page of the website for its "active reporting units." As a result, DEED mailed the original determination of eligibility in July 2010 to Lone Mountain's prior address, even though it had recorded Lone Mountain's primary mailing address as updated in 2008. Lone Mountain's accurate updating of its primary mailing address in DEED's database provided DEED with the actual last known address to which it should have mailed the determination of eligibility. Without dispute, DEED did not send the determination to that address.

We have no difficulty in deciding that the consequence of the mistaken addressing of the letter should not be borne by the party that followed DEED's website directions in updating its address. We recognize that DEED likely would have sent the notice to the correct address if Lone Mountain had also changed its address on a different, additional page of DEED's website; and it might also be that some employers figure out that DEED wishes employers to record their address changes in more than one place. But the ULJ was persuaded that Lone Mountain acted reasonably in believing that, by changing its address on one page, DEED would apply the change for all purposes. We are similarly satisfied on this record that the error was not because of Lone Mountain's lack of reasonable effort or diligence. This is unlike the situation in several unpublished opinions, not cited here, in which one party merely claimed to have attempted to submit change-of-address information to DEED electronically, but in which no electronic evidence of the attempt exists because the party failed to complete the change by clicking the website's simple "confirm" button. Here, neither party disputes that Lone Mountain effectively informed DEED of its updated address in a completed website action before DEED sent the notice to a different, prior address.

## II

Stassen next argues that the second ULJ erred by determining that he is ineligible for unemployment benefits because he quit his employment. We review de novo a ULJ's determination that an applicant is ineligible for unemployment benefits. *Sykes v. Nw. Airlines, Inc.,* 789

N.W.2d 253, 255 (Minn.App.2010). And we review findings of fact in the light most favorable to the ULJ's decision and will rely on findings that are substantially supported by the record. *Skarhus v. Davanni's, Inc.*, 721 N.W.2d 340, 344 (Minn.App. 2006). An applicant who quits his employment is ineligible for unemployment benefits unless he falls under a statutory exception to ineligibility. Minn.Stat. § 268.095, subd. 1 (2010). Whether an employee has been discharged or voluntarily quit is a question of fact subject to our deference. *Midland Elec., Inc. v. Johnson*, 372 N.W.2d 810, 812 (Minn.App.1985).

■ Stassen argues that he did not really quit his employment but that his email was merely his attempt to gain support from Lone Mountain or to invite negotiation for severance compensation. A quit from employment occurs when the employee makes the decision to end the employment. Minn.Stat. § 268.095, subd. 2(a). Substantial evidence supports the ULJ's finding that Stassen quit. Stassen's email contained language that Lone Mountain and the ULJ could reasonably interpret as resignation. He wrote of his current "transition out of LMTL's employ," explained that "several matters ... make continuing on extremely unpleasant," and "wish[ed] Wayne, Joe, and Andy well," concluding, "it *has been* a real trip!!" (emphasis added). He also invited Lone Mountain's "decision ... to sever immediately" rather than to engage in his alternative suggestion for his "transition" from employment, with a declaratory "so be it" to emphasize the point. The ULJ found that Stassen's testimony corroborated the straightforward reading of Stassen's email, reasoning that the most logical conclusion is that Stassen intended to quit his employment. The finding is sound.

■ We add that Stassen's argument on appeal confirms the ULJ's finding. By contending that he intended his email to trigger a negotiation for *severance* pay, Stassen implicitly admits that he wanted Lone Mountain to recognize that he intended to *sever* the employment relationship. We recognize that Stassen unambiguously and immediately attempted to reframe his communication as something less than resignation as soon as his supervisor telephoned to state that Lone Mountain had accepted it. But because Lone Mountain had already reasonably read and accepted the email as a resignation letter, at most Stassen's recantations were his attempt to rescind his resignation, which Lone Mountain had already deemed effective. The statute does not direct us to decide whether Lone Mountain might have accepted Stassen's recantation, only whether he quit his employment. And an employee who seeks to withdraw his previously submitted notice of quitting has quit the employment if the employer does not agree that the notice may be withdrawn. Minn.Stat. § 268.095, subd. 2(c). Because Lone Mountain was not bound to accept Stassen's multiple attempts at rescission, his email constituted his resignation for the purpose of determining his eligibility for unemployment benefits.

### III

Stassen next maintains that he did not receive a fair hearing, citing four supposed ULJ errors: that the second ULJ failed to assist him; that she interrupted, admonished, and chastised him during the hearing; that she overlooked key evidence; and that she predetermined the decision before the hearing began. We will reverse a ULJ's decision if it was made on an unlawful procedure. Minn.Stat. § 268.105, subd. 7(d)(3); *see also Wichmann v. Travalia & U.S. Directives, Inc.*, 729 N.W.2d 23, 27 (Minn.App.2007). We are not per-

suaded that Stassen's claims were unfairly treated.

 The record belies Stassen's claim that the second ULJ failed to assist him. A ULJ should assist unrepresented parties in presenting evidence. Minn. R. 3310.2921 (2009). This is not to say that a ULJ is the unrepresented party's advocate; the evidentiary hearing is a fact-gathering endeavor, Minn.Stat. § 268.105, subd. 1(b), and, like all judicial and quasi-judicial fact-gathering endeavors, it is still adversarial and requires the judicial officer to maintain neutrality to assure fairness to all parties. The ULJ met her obligation to assist Stassen without losing sight of the neutrality of her role. The ULJ explained the hearing's procedure and purpose. She questioned Lone Mountain's representatives and gave Stassen the opportunity to cross-examine them. She asked Stassen if he had anything further to add to his testimony. And she answered all of Stassen's questions. We hold that she did not fail in her measured obligation to assist him.

 Although the ULJ did briefly interrupt Stassen, we see nothing in her interruptions that suggest that they unfairly prejudiced him. During Stassen's cross-examination of Lone Mountain's human resources director, for example, the ULJ interrupted Stassen because Stassen was not allowing the director to answer his questions; instead, he appeared to take the occasion to offer testimony of his own. Examining a witness properly without interjecting one's own commentary can be difficult, even for trial attorneys, so the ULJ's gentle interjections to guide Stassen in distinguishing between his right to cross-examine and his right to testify were helpful. The ULJ's restrictions also allowed her to hear the testimony that Stas-

sen was himself interrupting. She appropriately told Stassen that he should listen better and warned that if he continued to interrupt the answers she would end the cross-examination. Although Stassen contradicted her, insisting that he had been following directions, the ULJ did not curtail his questioning. We conclude that the ULJ interrupted Stassen consistent with her duty to exercise control in a manner that protected the parties' rights to a fair hearing.

Stassen's arguments that the ULJ overlooked his evidence and predetermined the case without regard to the facts are wholly unsupported and belied by the record, needing no further discussion.

## DECISION

Because DEED did not mail its eligibility notice to Lone Mountain's last known address and DEED's mismailing was not caused by Lone Mountain's failure to inform DEED of its new address, Lone Mountain's appeal from DEED's determination of eligibility was not untimely. The ULJ properly considered Lone Mountain's appeal and, after a fair hearing, she relied on sufficient evidence to find that Stassen quit his employment and is ineligible to receive unemployment benefits.

**Affirmed.**