*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0967**

Margaret Acker,
Relator,

vs.

Inter City Oil Co., Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed March 9, 2015
Affirmed
Smith, Judge**

Department of Employment and Economic Development
File No. 31794638-5

Margaret Acker, St. Paul, Minnesota (pro se relator)

Inter City Oil Co., Inc., Duluth, Minnesota (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Bjorkman, Presiding Judge; Smith, Judge; and Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SMITH**, Judge

We affirm the determination of the unemployment law judge (ULJ) that relator is ineligible for employment benefits because the record supports the ULJ's finding that relator quit her employment.

**FACTS**

Relator Margaret Acker was employed by respondent Inter City Oil Co., Inc. (ICO) in the mid-1990s and again from December 2000 to October 24, 2013. Acker and ICO have competing accounts of Acker's last day of employment, with Acker asserting that she was discharged and ICO asserting that Acker quit. The Minnesota Department of Employment and Economic Development (DEED) determined that Acker was ineligible for unemployment benefits because she quit her employment. Acker appealed this determination, and a ULJ held an evidentiary hearing.

At the hearing, Acker testified that she participated in a conference call on the morning of October 24, 2013 with ICO Vice President of Corporate Operations Debra Krieg and ICO's CEO regarding "the changing of [her] hours." Acker believed that ICO was asking her to change her hours so that she could "babysit" another employee, and she refused to change her hours for that reason. Following the conference call, Acker faxed a blank sheet of hours to ICO with the words: "You can fill this out yourself and leave my name off[.]  I am DONE[.]"  According to Acker, she meant only that she was done discussing the change in hours.

Acker testified that ICO's CEO called her back about two hours later and told her that she was a bad manager, that none of her customers liked her, and that she "should get out." Acker believed that no one from ICO would "have the courtesy to come down and fire [her]" in person, so she left after another employee arrived for work.

Krieg participated in the hearing on behalf of ICO. She testified that she and the CEO had a phone conversation with Acker on the morning of October 24 during which Acker made several accusations regarding another employee and implied that Krieg and the employee were having an inappropriate relationship. The CEO then told Acker that Krieg would be at her store the next day and could address Acker's concerns at that time. But Acker responded that she would not be there because she was going out of town. Later that morning, ICO received Acker's fax regarding the schedule, which the CEO interpreted "as a quit." The next day, Krieg learned from another employee that Acker had quit and left her keys.

Krieg also testified that Acker's schedule change was not related to another employee but was instead motivated by ICO's need to "bring [its] labor hours under control." Krieg denied that the CEO told Acker she was a horrible manager because Acker was not a manager. And Krieg denied that a second conversation took place between the CEO and Acker because ICO would have immediately taken several steps (including changing locks and passcodes and deleting Acker from the security system) if Acker had been fired.

Following the hearing, the ULJ found that Acker quit her employment, that she "did not quit for a good reason caused by ICO," and that she was ineligible for

3

unemployment benefits. The ULJ credited Krieg's version of events in her findings of fact, determining that ICO's CEO did not make a second phone call to Acker and "did not tell Acker she was discharged from employment." The ULJ explained that "[t]he employer's testimony was more credible because it was organized, logical and supported by the evidence provided" and "Acker's testimony was less credible because it was less specific, inconsistent and vague."

After Acker filed a timely request for reconsideration, the ULJ set aside her findings of fact and decision and ordered an additional evidentiary hearing to "further develop[] the timeline of events leading to Acker's separation from employment." At the additional hearing, the ULJ admitted several new exhibits from both parties, including ICO's surveillance video from the store on October 24, 2013.

After reviewing the new evidence, the ULJ again credited Krieg's testimony "because it was straightforward, specific, and consistent with the exhibits provided" and found Acker's testimony "less credible because it was inconsistent and at times not plausible." The ULJ again concluded that Acker quit her employment and that she was ineligible for unemployment benefits. Acker requested reconsideration of the ULJ's decision, which was later affirmed.

## D E C I S I O N

This court may remand, reverse, or modify a ULJ's decision denying benefits when the ULJ's findings, inferences, conclusions, or decision are affected by an error of law, unsupported by substantial evidence in view of the entire record, or arbitrary or capricious. Minn. Stat. § 268.105, subd. 7(d) (2014). We view factual findings in the

4

light most favorable to the ULJ's decision and will not disturb them "when the evidence substantially sustains them." *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). We give deference to the ULJ's credibility determinations. *Id.*

On appeal, Acker challenges only the ULJ's determination that she quit her employment. She does not challenge the ULJ's additional determination that Acker's quitting was not due to a good reason caused by ICO. An employee who quits her employment without good reason caused by her employer is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 1(1) (2014). "A quit from employment occurs when the decision to end the employment was, at the time the employment ended, the employee's." *Id.*, subd. 2(a) (2014). Whether an employee quit or was discharged is a question of fact, subject to this court's deference. *Stassen v. Lone Mountain Truck Leasing, LLC*, 814 N.W.2d 25, 31 (Minn. App. 2012).

Acker argues that the evidence supports her position that she was discharged from her employment. We disagree. Following the morning conference call, Acker faxed a blank schedule to ICO with the words: "You can fill this out yourself and leave my name off[.] I am DONE[.]" As the ULJ explained, "[i]t is unclear why Acker would ask to be left off of the schedule entirely if she intended to continue working with ICO." Acker then finished her shift, and the surveillance video refutes Acker's explanation that she stayed only until another employee arrived because there was always another employee in the store with her. When Acker finally left the store, she left her keys with another employee. In addition, ICO's phone-record evidence does not support Acker's claim that she received a later call from ICO's CEO. The evidence substantially supports the ULJ's

5

determination that Acker made the decision to end her employment. *See* Minn. Stat. § 268.095, subd. 2(a).

Acker also suggests that the ULJ should have credited her testimony rather than Krieg's testimony. "When the credibility of a witness testifying in a hearing has a significant effect on the outcome of a decision, the unemployment law judge must set out the reason for crediting or discrediting that testimony." Minn. Stat. § 268.105, subd. 1a(a) (2014). The ULJ properly explained her credibility determinations, stating that Krieg's testimony was "straightforward, specific, and consistent with the exhibits provided" while Acker's testimony was "inconsistent and at times not plausible." We defer to the ULJ's credibility determinations. *Skarhus*, 721 N.W.2d at 344; *see Nichols v. Reliant Eng'g & Mfg., Inc.*, 720 N.W.2d 590, 594 (Minn. App. 2006) ("When witness credibility and conflicting evidence are at issue, we defer to the decision-maker's ability to weigh the evidence and make those determinations."). In addition, the ULJ's findings are supported by substantial evidence in the record because the timesheets, phone records, and surveillance video support ICO's version of events. *See Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 532-33 (Minn. App. 2007) (we uphold the ULJ's credibility findings when they are supported by substantial evidence). And there is no evidence in the record to support Acker's claim that ICO's timecard evidence was altered.

Finally, Acker implies that the ULJ improperly relied on hearsay evidence because Kreig should not have been allowed to testify on behalf of ICO's CEO. But a ULJ may receive "any evidence that possesses probative value, including hearsay." Minn. R.

6

3310.2922 (2013). There is no evidence that Acker requested the CEO's testimony at either hearing. Krieg's testimony and ICO's exhibits possessed probative value, and the district court did not err by allowing Krieg to testify on behalf of ICO. *See id.*; *see also Lamah v. Doherty Emp't Grp., Inc.*, 737 N.W.2d 595, 603 (Minn. App. 2007) (explaining that the relator's evidentiary challenges were without support when it was "unclear what additional evidence or testimony he believes would have been necessary").

In sum, we do not find error in the ULJ's credibility determinations. The ULJ's factual findings are supported by substantial evidence. Therefore, we affirm.

**Affirmed.**