*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1049**

Loria Quade,
Relator,

vs.

City of Minneapolis,
Respondent,
Department of Employment and Economic Development,
Respondent.

Department of Employment and Economic Development
File No. 33506515-3

**Filed February 1, 2016
Reversed and remanded
Stauber, Judge**

Loria Quade, Bricelyn, Minnesota (pro se relator)

City of Minneapolis, c/o TALX UCM Services, St. Louis, Missouri (respondent employer)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Stauber, Presiding Judge; Kirk, Judge; and Minge, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**STAUBER**, Judge

In this unemployment-compensation appeal, relator challenges a determination by an unemployment law judge (ULJ) that she is ineligible for unemployment benefits because she quit her employment to care for her ailing mother. Relator argues that because the record does not support the ULJ's conclusion that a reasonable accommodation was made available to her by her employer, the ULJ erred by concluding that she did not satisfy the medical-necessity exception to the disallowance of unemployment benefits. Because the record does not support the ULJ's finding that a reasonable accommodation was made available to relator, we reverse. But because the ULJ failed to make findings on the issue of whether relator first requested an accommodation, we remand for findings on that issue.

**FACTS**

In September 2008, relator Loria Quade began working for respondent City of Minneapolis (city) as a program assistant. In 2010, relator moved to near Blue Earth to care for her mother, who has Alzheimer's disease. Because Blue Earth is about two-and-a-half hours from Minneapolis, relator "worked out . . . an alternative work arrangement" with the city which allowed her to live near her mother, "work for the city full-time[,] and . . . come and work in the office . . . as needed."

Relator's "alternative work arrangement" ended in March 2014. As a result, relator worked out a new arrangement wherein she "would be in the office Tuesday, Wednesday, Thursday and use [her] FMLA Monday and Friday." Several months later,

2

in October 2014, relator's mother entered a nursing home. But according to relator, her mother still needed "care from [her] because the nursing home doesn't provide all the care that's needed." Specifically, relator claimed that she was still required to take her mother to her medical and dental appointments.

By March 2015, relator's FMLA was exhausted. Consequently, relator was informed on March 19, 2015, that if she wanted to remain employed with the city, she could (1) return full-time; (2) return part-time without benefits; or (3) take a leave of absence of six or 12 months. Under relator's union contract, an employee taking a six-month leave would be "returned to their position within their department." The contract also states that an employee taking a 12-month leave would be returned to their position if available, and that if that position is unavailable, the employee is assigned to a different department in the same position if one is available. The contract further states that if no positions are available, the employee "would be assigned to the appropriate layoff list for their classification." Relator was told that any personal leave of absence would have to be approved by the department head, but that approval was not guaranteed. Relator had until March 23, 2015, to make her decision.

On March 23, 2015, relator decided to quit her employment and not take a personal leave of absence because (1) she was told that a 12-month leave would not be approved and (2) the six-month leave would not "work for anyone." Therefore, relator claimed that she "couldn't in good conscience accept [a] leave." Relator subsequently applied for unemployment benefits and respondent Minnesota Department of Employment and Economic Development (department) determined that relator was

3

ineligible for unemployment benefits. Relator appealed that decision and, following a de novo hearing, the ULJ determined that relator was ineligible for benefits because she quit her job and none of the exceptions listed in Minn. Stat. § 268.095, subd. 1 (2014), were applicable. Relator then requested reconsideration and the ULJ affirmed his decision. This certiorari appeal followed.

## DECISION

This court reviews a ULJ's decision to determine whether a party's substantial rights may have been prejudiced because the ULJ's findings, inferences, conclusions, or decision are not supported by substantial record evidence or are affected by an error of law or procedure. Minn. Stat. § 268.105, subd. 7(d)(3)-(5) (2014). The ULJ's findings of fact are viewed in the light most favorable to the decision, and we will not disturb the findings if the record substantially supports them. *Stassen v. Lone Mountain Truck Leasing, LLC*, 814 N.W.2d 25, 31 (Minn. App. 2012). But we review questions of law de novo, including the question of whether the ULJ's findings establish that the applicant falls within a statutory exception to ineligibility. *See Nichols v. Reliant Eng'g & Mfg., Inc.*, 720 N.W.2d 590, 594-95 (Minn. App. 2006).

Generally, an employee who quits employment is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 1. "A quit from employment occurs when the decision to end the employment was, at the time the employment ended, the employee's." *Id.*, subd. 2(a) (2014). But an employee who quits employment is eligible for benefits if the employee quits because of one of the exceptions listed in section 268.095, subdivision 1. One exception to the disallowance of unemployment benefits is when a "serious

4

illness or injury made it medically necessary that the applicant quit." Minn. Stat. § 268.095, subd. 1(7). An applicant can only qualify for this exception if (1) the applicant informed the employer about the medical problem; (2) the applicant requested an accommodation; and (3) "no reasonable accommodation was made available." *Id.*

Here, the ULJ found that the "only exception applicable to this case" is the medical-necessity exception found in section 268.095, subdivision 1(7). The ULJ then found that relator was offered a leave of absence that would have "allowed her to return to work if she was able when the leave ended. It is not clear whether or not [relator] would have been able to return to work after the end of the leave of absence. However, this was a reasonable accommodation which was made available." The ULJ concluded that because relator "does not satisfy the exception listed" in Minn. Stat. § 268.095, subd. 1(7), she is ineligible for unemployment benefits.

Relator argues that the evidence in the record demonstrates that a leave of absence would never have been approved by the city. Thus, relator contends that the ULJ erred by concluding that a reasonable accommodation was made available to her.

We agree. Jennifer Gabbard, the "HR generalist" for the city," testified that she "offered [relator] a personal leave of absence that could be either six months or twelve months in duration." But Gabbard later testified: "I said any leave of absence outside of [relator's] particular situation would need to be approved by [relator's] department head, Kevin Carpenter and that I could not guarantee approval of a personal leave of absence. However, I could tell you that it would be available to [relator]." Gabbard's testimony indicates that she believed a leave of absence would be available to relator, but that

5

ultimately it would have to be approved by a department head, which is consistent with relator's testimony. Relator claimed that she was told that a 12-month leave "wouldn't be approved," and the undisputed testimony from both Gabbard and relator demonstrates that at the time relator quit, a leave of absence was not guaranteed because it was never officially approved. Because the city never formally approved either a six-month or 12-month leave-of-absence, a reasonable accommodation was never officially offered to relator.[1] Thus, we conclude that the ULJ's finding that a reasonable accommodation was made available to relator is unsupported by the record.

The department does not address the issue of whether the city offered relator a reasonable accommodation. Instead, the department focuses on the second step in the medical-necessity exception under Minn. Stat. § 268.095, subd. 1(7); whether relator requested an accommodation. The department argues that even if "futile," section 268.095, subdivision 1(7), mandates that a request for accommodation be made. The department asserts that the "ULJ found as a fact that [relator] did not request a leave of absence before quitting. That finding is not disputed." The department contends that because relator "chose not to apply for a leave," the ULJ properly concluded that relator was not entitled to benefits.

---

[1] Relator attached to her reply brief a correspondence from her supervisor dated April 27, 2015, in which he stated that a six-month leave was not open for discussion and would not have been approved. However, this correspondence was not part of the record before the ULJ and, therefore, we do not consider it. *See Thiele v. Stich*, 425 N.W.2d 580, 582-83 (Minn. 1988) (stating that an appellate court may not consider matters not produced and received in evidence below).

6

The department is correct that Minn. Stat. § 268.095, subd. 1(7), clearly states that a request for accommodation is a prerequisite to the application of the medical-necessity exception. And the statute leaves no room for a reasonableness exception to the accommodation-request requirement. *See id.* Therefore, if relator failed to request an accommodation, the city would have no reason to offer a reasonable accommodation, and the lack of such an offer would be of no consequence.

However, despite the department's assertion to the contrary, the ULJ did not find as a fact that relator failed to request an accommodation. Instead, our review of the ULJ's order reveals that the decision to deny benefits was based on relator's failure to accept the employer's reasonable accommodation; the decision contains no findings as to whether relator actually requested an accommodation. Because there are no findings by the ULJ as to whether relator requested an accommodation, a decision on that issue on appeal would require us to make findings on the issue and then determine as a matter of law whether relator requested an accommodation. *See Nichols*, 720 N.W.2d at 594-95 (stating that *whether a ULJ's findings* establish that an applicant falls within a statutory exception to ineligibility presents a question of law that is reviewed de novo (emphasis added)). It is well settled that this court does not find facts on appeal. *Rainforest Cafe, Inc. v. State of Wis. Inv. Bd.*, 677 N.W.2d 443, 452 (Minn. App. 2004). Accordingly, because the ULJ failed to make findings on the issue of whether relator requested a reasonable accommodation, the matter must be remanded for findings to address the issue.

The department also contends that relator failed to request part-time work and that her failure to do so is a failure to request an accommodation because part-time work would have been a reasonable accommodation under the circumstances. But the department cites no authority for the assertion that an applicant must request part-time work as an accommodation, nor does the department cite any authority for the position that part-time work constitutes a reasonable accommodation. Moreover, the issue of whether part-time work was requested, or constitutes a reasonable accommodation, was not raised below nor addressed by the ULJ. Thus, the issue has been waived. *See Thiele*, 425 N.W.2d at 582 (stating that an appellate court must consider only issues that were presented to and considered by the district court, and a party may not raise a new theory on an issue litigated at the district court).

The department further argues that regardless of whether the city offered relator a reasonable accommodation, the "legal question is whether" relator's quit in order to care for her mother "meets the statutory requirement of 'necessary care.'" The department contends that "[w]hile [relator's] actions are laudable, it's a stretch to find that such constitutes 'necessary care' as required by the statute." But again, this issue was neither raised below nor addressed by the ULJ. As a result, the ULJ never made any findings as to whether relator's actions constitute necessary care for her mother. Moreover, because the issue was not contested at the hearing, the record is underdeveloped with respect to the care relator provided. And, because the issue was not raised below nor decided by the ULJ, the issue was waived. *See Thiele*, 425 N.W.2d at 582.

**Reversed and remanded.**