*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0372**

Terry Torgerson,
Relator,

vs.

Mark R. Hellerud,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed December 12, 2016
Affirmed
Larkin, Judge**

Department of Employment and Economic Development
File No. 34080396-3

Terry L. Torgerson, Hendrum, Minnesota (pro se relator)

Mark R. Hellerud, Ada, Minnesota (attorney pro se)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)


        Considered and decided by Peterson, Presiding Judge; Larkin, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Relator challenges an unemployment-law judge's (ULJ) determination that he is ineligible for unemployment benefits because he quit his employment. Relator questions the ULJ's credibility determinations and suggests that he did not receive a fair hearing. We affirm.

## FACTS

Relator Terry Torgerson requested unemployment benefits after his employment with respondent Mark Hellerud ended. Respondent Minnesota Department of Employment and Economic Development (DEED) determined that Torgerson did not qualify for unemployment benefits because he quit his employment. Torgerson appealed DEED's ineligibility determination, and a ULJ held a telephonic hearing. The issues at the hearing were whether Torgerson quit and, if so, whether he had a good reason to quit.

During the hearing, the ULJ reviewed the exhibits that had been submitted and asked the parties whether the exhibits included the latest documents submitted by each party. Torgerson testified that his coworkers verbally abused and threatened him and that Hellerud fired him without explanation. Hellerud testified that "there was a slow progression of . . . bad behavior of [Torgerson's] and we tried to work with him but it culminated in this last episode," referring to an altercation instigated by Torgerson a few days before the end of his employment. Hellerud called four witnesses, and they described Torgerson's angry outbursts at work. Torgerson had the opportunity to cross-examine Hellerud and each of his witnesses.

After asking Torgerson some questions, the ULJ heard from Virgil McKay, a witness on Torgerson's behalf. McKay indicated that he knew two of Hellerud's witnesses and alleged that they drink alcohol before work "all the time." Hellerud recalled those two witnesses, and they indicated that they did not know McKay well. The ULJ asked for final comments from each party before concluding the hearing.

The ULJ issued a decision after the hearing, finding Hellerud and his witnesses more credible than Torgerson and concluding that a "preponderance of the evidence shows that Torgerson did quit his job." The ULJ noted that an applicant who quit employment is ineligible for all unemployment benefits unless an exception applies and found no applicable exception. Torgerson requested reconsideration, challenging the ULJ's factual findings and credibility determinations, asserting that the ULJ did not consider certain documents, and submitting additional documents. The ULJ affirmed his decision, noting that he had considered the reliability of Hellerud's witnesses and the documents Torgerson originally submitted when making his initial decision. The ULJ concluded that because the "additional exhibits submitted by Torgerson in this case would not likely change the outcome of the decision[,] [a]n additional hearing shall not be ordered." Torgerson appeals by writ of certiorari.

## D E C I S I O N

This court may reverse or modify a ULJ's decision if a relator's "substantial rights . . . may have been prejudiced because the findings, inferences, conclusion, or decision are . . . made upon unlawful procedure." Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015). However, this court does not presume error on appeal. *Kroona v. Dunbar*, 868

3

N.W.2d 728, 735 (Minn. App. 2015). "[T]he burden of showing error rests upon the one who relies upon it." *White v. Minn. Dep't of Nat. Res.*, 567 N.W.2d 724, 734 (Minn. App. 1997) (quotations omitted), *review denied* (Minn. Oct. 31, 1997). Moreover, an assignment of error in a brief based on mere assertion and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection. *State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997).

A court traditionally accords some latitude and consideration to a pro se litigant, such as Torgerson. *Liptak v. State ex rel. City of New Hope*, 340 N.W.2d 366, 367 (Minn. App. 1983). Nonetheless, we generally hold pro se parties to the same standards as attorneys, and they must comply with court rules. *Fitzgerald v. Fitzgerald*, 629 N.W.2d 115, 119 (Minn. App. 2001).

Torgerson's brief to this court states, in its entirety:

I gave DEED documents that were disregarded by the ULJ[,] [one] showing statements made by Mark Hellerud pages 19-24 of transcript is all fraudulent[.] Also gave documents of Mark Hellerud habitually shorting his employees on pay and documents of two men who worked for Mark Hellerud shorted on pay and bullied into defending themselves only to suffer both legal and financial hardship[.] Also my witness was not called into the hearing until page 46 of the transcript.

In the absence of citation to legal authority or legal argument, we generously construe Torgerson's appellate brief as a challenge to the ULJ's credibility determinations and an allegation that he did not receive a fair hearing.

**I.**

Torgerson appears to assert that Hellerud's testimony was fraudulent, thereby calling into question the ULJ's credibility determination. "When the credibility of a

witness testifying in a hearing has a significant effect on the outcome of the decision, the unemployment law judge must set out the reason for crediting or discrediting that testimony." Minn. Stat. § 268.105, subd. 1a(a) (2014). "We view the ULJ's factual findings in the light most favorable to the decision, giving deference to the credibility determinations made by the ULJ." *Bangtson v. Allina Med. Grp.*, 766 N.W.2d 328, 332 (Minn. App. 2009) (quotation omitted).

The ULJ found that the "testimony of Mark Hellerud [was] more credible. Mark Hellerud has less of a vested interest in this matter and his testimony was corroborated by other witnesses. The testimony of Mark Hellerud was honest and sincere and it was reasonable compared with the other evidence." The ULJ also credited testimony that Torgerson harassed another employee over Torgerson's testimony that he was harassed, based on corroboration "by other witnesses and hearsay evidence."

Because the ULJ adequately explained his credibility determination and the record substantially sustains it, we do not disturb the credibility determination.

## II.

Torgerson also appears to question whether the hearing was fair, noting that his witness was not called until near the end of the hearing and asserting that the ULJ did not consider certain documents. "We will reverse a ULJ's decision if it was made on an unlawful procedure." *Stassen v. Lone Mountain Truck Leasing, LLC*, 814 N.W.2d 25, 31 (Minn. App. 2012). "A ULJ should assist unrepresented parties in presenting evidence. This is not to say that a ULJ is the unrepresented party's advocate; the evidentiary hearing is a fact-gathering endeavor, and, like all judicial and quasi-judicial fact-gathering

endeavors, it is still adversarial and requires the judicial officer to maintain neutrality." *Id.* at 32 (citations omitted).

Here, the ULJ asked Torgerson if the ULJ had all of Torgerson's exhibits. The ULJ questioned all of the witnesses and allowed Torgerson the opportunity to cross-examine all of the witnesses. Torgerson complains that the ULJ did not call McKay until the end of the hearing, but he does not explain why that timing was improper or how it prejudiced his substantial rights. Torgerson also complains that the ULJ ignored certain documents regarding Hellerud's underpayment of his employees. But the ULJ's order of affirmation indicates that he considered these documents, which included time cards, pay stubs, and a newspaper article entitled "Halstad-area farm wage dispute ended in ax threats, robbery and assault, court records say." Moreover, Torgerson does not explain why these documents were relevant to the issues before the ULJ. In sum, the record does not support Torgerson's suggestion that he received an unfair hearing.

Because Torgerson has not established reversible error, we affirm.

**Affirmed.**

6