*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1079**

In the Matter of the Licensing Order Issued to
North Sierra Construction, LLC, and Louis Dee Sierra.

**Filed March 16, 2026**
**Affirmed**
**Wheelock, Judge**

Department of Labor and Industry
File No. 65-1902-38895

Aaron A. Dean, Madeline E. Davis, Spencer Fane LLP, Minneapolis, Minnesota (for relators North Sierra Construction, LLC, and Louis Dee Sierra)

Keith Ellison, Attorney General, Stephen D. Melchionne, Assistant Attorney General, St. Paul, Minnesota (for respondent Minnesota Department of Labor and Industry)

Considered and decided by Wheelock, Presiding Judge; Reyes, Judge; and Kirk, Judge.[*]

**NONPRECEDENTIAL OPINION**

**WHEELOCK**, Judge

Relators challenge the licensing order with penalty issued against them by respondent Minnesota Department of Labor and Industry (the department), arguing that the commissioner of labor and industry's final order was arbitrary and capricious and

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

unsupported by substantial evidence. Because the commissioner's findings are supported by substantial evidence in the record and the commissioner did not legally err, we affirm.

## FACTS

In March 2020, relator Louis Dee Sierra purchased a mobile home in Red Wing and titled it in the name of his company, relator North Sierra Construction LLC (the LLC). The LLC is in the business of residential remodeling and snow removal. Sierra is the LLC's sole owner. Sierra renovated the mobile home, which included installing flooring, windows, interior and exterior doors, countertops, and appliances. Sierra also installed a prefabricated deck adjacent to the home. Relators sold the home in December 2020, and in August 2021, the new owner filed a complaint with the department, claiming that the home suffered from numerous defects caused by Sierra's renovations.

The department assigned the matter to one of its investigators, who emailed Sierra regarding the department's concern that relators engaged in the unlicensed sale of a manufactured home, performed renovations to a manufactured home without permits or plan approval, and performed plumbing and electrical work without a license. The investigator requested that Sierra respond to these concerns. Sierra responded that all electrical and plumbing work had been done by licensed contractors, that he was unaware that a private individual sale of a mobile home required special licensure, and that he had not done any structural, securing, or roofing work during the remodeling. Following additional emails with Sierra, the investigator engaged an inspector to perform an onsite review of potential violations, which occurred in December 2021 and April 2022. The inspection reports showed that there were no permits on file for any renovations to the

2

mobile home and that the deck was over 30 inches in height. The inspection reports included photographs of the mobile home, including a photograph of the deck with a measuring tape open that established the height of the deck as approximately 34 inches.

Following the inspection, the department issued a licensing order with penalty against relators based on its determination that relators had remodeled a manufactured home without obtaining plan approval and proper permits, performed or offered to perform plumbing services without a license, sold a manufactured home without a license, and during the investigation, supplied the department with false, misleading, and incomplete information.

Relators timely requested a hearing to contest the order, and an administrative law judge (ALJ) held a two-day hearing at which the ALJ heard testimony from Sierra, the inspector, the investigator, the owner of the plumbing company that had performed work on the mobile home, and the mobile home's new owner. Sierra testified that he made improvements to the mobile home but did not make structural changes, he installed a prefabricated deck, and he recalled that the deck height was 30 inches or less above the ground. In contrast, the inspector testified that the deck was "more than 30 inches above grade." Sierra also testified that he had initially purchased and remodeled the home for personal use, despite listing the title in the name of the LLC, because he had intended to give it to a family member. He asserted that he sold the mobile home only because the family member decided not to move in to it. Regarding the decision to title the mobile home in the LLC's name, Sierra testified that he "didn't think it would be a big deal" and "did not think twice about it" and that the LLC is not in the business of flipping homes.

3

The inspector testified that he was unable to locate a seal or label[1] displayed on the mobile home.

The ALJ issued their findings of fact, conclusions of law, and recommendation, determining that the department failed to establish that relators committed any violation and recommending that the commissioner dismiss the matter and rescind the licensing order with penalty in its entirety. The commissioner affirmed the ALJ's decision except as to count I, which alleged violations of plan-review and -approval requirements and permit requirements. The commissioner determined that applicable law required relators to submit plans for approval of the renovations to the mobile home because it bears or is required to bear a seal or label (count I(a)) and to secure a permit for the deck installation (count I(b)). The commissioner further determined that relators violated Minn. Stat. § 326B.84(2) (2024), because the failure to secure a permit constitutes a fraudulent, deceptive, or dishonest practice under the related regulation (count I(c)). The commissioner ordered that relators' qualifying builder registration and contractor's license be censured and imposed a $1,000 penalty.

Relators appeal.

## DECISION

Appellate courts may reverse an agency decision when the decision is

> (a) in violation of constitutional provisions; or

---

[1] Manufactured homes are required to have a construction seal or label indicating code compliance. *See* Minn. R. 1350.0400, subps. 1, 3 (setting forth requirements for labels and installation seals for manufactured homes), .0100, subps. 31 (defining "installation seal"), 33 (defining "label") (2023).

> (b) in excess of the statutory authority or jurisdiction of the agency; or
>
> (c) made upon unlawful procedure; or
>
> (d) affected by other error of law; or
>
> (e) unsupported by substantial evidence in view of the entire record as submitted; or
>
> (f) arbitrary or capricious.[2]

Minn. Stat. § 14.69 (2024).

Although "a rejection of the ALJ's recommendation without explanation may indicate arbitrary action," our standard of review "is not heightened" when the commissioner's decision deviates from the ALJ's recommendation. *In re Petition of Excelsior Energy, Inc. for Approval of a Power Purchase Agreement*, 782 N.W.2d 282, 289 (Minn. App. 2010). "An agency's factual determinations—made within the scope of the agency's statutory authority—are reviewed under the substantial-evidence test." *In re Corr. Orders Issued to Wealshire of Bloomington*, 3 N.W.3d 284, 289 (Minn. App. 2024). An agency decision is supported by substantial evidence if it relies on "relevant evidence

---

[2] We observe that relators invoked the arbitrary-and-capricious standard in their briefs to argue that the commissioner's decision should be reversed; however, their arguments are about a lack of substantial evidence and legal errors they claimed the commissioner made in her determinations. The arbitrary-and-capricious standard applies when appellants argue that the agency did one or more of the following:

> (a) relied on factors not intended by the legislature; (b) entirely failed to consider an important aspect of the problem; (c) offered an explanation that runs counter to the evidence; or (d) the decision is so implausible that it could not be explained as a difference in view or the result of the agency's expertise.

*Citizens Advocating Responsible Dev. v. Kandiyohi Cnty. Bd. of Comm'rs*, 713 N.W.2d 817, 832 (Minn. 2006), which relators did not argue here. We apply the appropriate standards to relators' arguments in this opinion. *See Pfeiffer v. Allina Health Sys.*, 851 N.W.2d 626, 633 (Minn. App. 2014) (stating that, "[i]n addressing the several decisions of the district court, the applicable standard will be identified"), *rev. denied* (Minn. Oct. 14, 2014).

that a reasonable mind might accept as adequate to support a conclusion, and more than a scintilla, some, or any evidence." *In re NorthMet Project Permit to Mine Application*, 959 N.W.2d 731, 749 (Minn. 2021) (quotations omitted). And we review questions of law de novo. *Stassen v. Lone Mountain Truck Leasing, LLC*, 814 N.W.2d 25, 29 (Minn. App. 2012).

Relators challenge the commissioner's decision in three ways, arguing that (1) they were not required to submit plans for approval because the department did not prove that the mobile home had a seal or label and because the deck was not an "alteration" under the applicable rule, (2) the commissioner's determination that the deck was more than 30 inches in height was not supported by substantial evidence, and (3) the commissioner abused her discretion in imposing a penalty on relators. We address each argument in turn.

## I. The commissioner's determination that plan review and approval were required was not an error of law and was supported by substantial evidence.

Relators argue that the department did not prove that the mobile home had a seal or label and therefore that it failed to establish that they violated plan-review and -approval requirements because the applicable regulation provides that these requirements apply only to mobile homes "bearing a seal or label." Minn. R. 1350.3800, subp. 3 (2023). Relators further assert that the regulation applies only to mobile homes manufactured after 1976 and that there was no witness testimony regarding the year of manufacture at the hearing. The department counters that the regulation nonetheless applies to any mobile home that is *required* to bear a seal or label, as Sierra's was, and that the commissioner properly relied

6

on documentary evidence establishing that the mobile home was manufactured in 1984. We agree.

The regulation the commissioner applied to relators provides: "Any person proposing an alteration to a manufactured home bearing a seal or label shall make application for review and approval of the alteration to the commissioner or to the local authority having jurisdiction on the form issued by the commissioner." *Id.* Relators contend that the department did not prove that the manufactured home had a seal or label and therefore that it failed to establish any violation of this rule; however, the commissioner points out that there is another rule—Minnesota Rule 1350.0400—that makes clear that the requirement to seek plan review and approval pursuant to rule 1350.3800 applies to Sierra's manufactured home. Subpart 2 of rule 1350.0400 states that "no person shall alter any manufactured home bearing, or *required to bear*, a construction seal or label as provided in subpart 1 unless the person has complied with part 1350.3800," and subpart 1 of that rule states that any manufactured home manufactured after 1976 is required to bear a seal or label. Minn. R. 1350.0400, subps. 1, 2 (2023) (emphasis added). Taken together, this means that, if the mobile home was manufactured after 1976, the owner must comply with rule 1350.3800's plan-review and -approval requirements to make any alterations to it, regardless of whether it actually had a seal or label. Thus, we discern no legal error in the commissioner's interpretation and application of the regulation.

In finding that the mobile home was manufactured in 1984, the commissioner relied on exhibits that included the motor-vehicle certificate of title for the manufactured home that identifies the year it was manufactured as "84." Relators argue that there was no

testimony as to the year of manufacture at the hearing but do not explain why it was improper for the commissioner to rely on documentary evidence in the record. Moreover, relators conceded that "[t]he mobile home was manufactured in 1984" in their posthearing brief. We conclude that this finding was supported by substantial evidence. Because the commissioner's determination that relators had to comply with rule 1350.3800 was based on substantial evidence in the record and there was no legal error, relators have not demonstrated a basis for us to reverse on this issue.

Relators next argue that installation of a prefabricated deck[3] is not a "construction alteration" within the scope of rule 1350.3800 that requires compliance with the plan-review and -approval requirements.[4] We disagree. In construing the regulation, we determine that installation of a deck plainly falls within the definition of "construction alteration." "The meaning of words in a regulation is a question of law we review de novo." *In re Rate Appeal of Benedictine Health Ctr.*, 728 N.W.2d 497, 503 (Minn. 2007). We

---

[3] Although it is not clear that the commissioner's order that plan review and approval were required applied only to the deck and not to other renovations, relators stated in their brief that this was their understanding of the commissioner's order: "The Commissioner's Final Order only finds that Mr. Sierra violated a rule by installing a preconstructed deck." "[W]e rely on the parties to frame the issues for decision." *Hoskin v. Krsnak*, 25 N.W.3d 398, 404 n.3 (Minn. 2025) (quotations omitted). And we do not presume error on appeal. *Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 237 N.W.2d 76, 78 (Minn. 1975). We therefore consider only whether the commissioner made an erroneous decision with respect to the deck installation.

[4] The department argues that relators waived this argument because they did not raise it at any time in the proceedings, citing *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Relators counter that they raised it by initially contending that they did not alter the structure. Because arguments may be refined on appeal, we address relators' statutory-interpretation argument. *See Jacobson v. $55,900 in U.S. Currency*, 728 N.W.2d 510, 523 (Minn. 2007) (stating that appellants may refine arguments on appeal).

construe rules as a whole and interpret their words and sentences in light of their context. *Troyer v. Vertlu Mgmt. Co.*, 806 N.W.2d 17, 24 (Minn. 2011).

The term "construction alteration" is defined as "the replacement, addition, modification, or removal of any equipment or installation which may affect the construction, plumbing, heating, cooling, or fuel-burning system, or electrical system or the functioning of any of these in manufactured homes subject to the code." Minn. R. 1350.0100, subp. 13 (2023).

Relators argue only that, because the prefabricated deck was not connected to the mobile home, it categorically could not "affect" the construction. But the language "addition . . . of *any* installation which *may* affect the construction . . . or [its] functioning . . . in manufactured homes" is broad enough to contemplate the installation of a structure that is mounted adjacent to a manufactured home but is not attached. *Id.* (emphasis added). The only qualifier for when an added installation constitutes a construction alteration is that the installation "may affect the construction . . . or [its] functioning." *Id. Black's Law Dictionary* defines "affect" as "to produce an effect on" or "to influence in some way." *Black's Law Dictionary* 70 (12th ed. 2024). Adding a deck to a manufactured home satisfies the definition of "construction alteration" because it plainly "may affect" the functioning of the manufactured home's construction. We are unconvinced that installing a deck onto a manufactured home is not a "construction alteration" merely because the deck is not affixed to it. Moreover, the language of rule 1350.3800 as a whole indicates that it applies to the sort of alterations that would be subject to permit requirements. *See* Minn. R. 1350.3800, subp. 1 (2023) ("Any alteration

9

of the construction . . . in a manufactured home that bears a seal or label, prior to receiving review and approval, and *prior to obtaining permits* . . . shall void the approval . . . ." (Emphasis added.)).

Decks are subject to general permit requirements under Minn. R. 1300.0120, subps. 1, 4(A)(7) (2023), if they are more than 30 inches in height, even if they are not attached to a structure. It follows then, that rule 1350.3800's related plan-review and -approval requirements are not limited to alterations that are attached to a manufactured home. We conclude that the commissioner's determination that Sierra was required to seek plan review and approval for the deck installation pursuant to rule 1350.3800 was not an error of law.

In sum, the commissioner's finding as to the year of manufacture is supported by substantial evidence in the record, the commissioner correctly concluded that the deck installation was not exempt from plan-review and -approval requirements, and the commissioner's determination as to count I(a) was not affected by legal error.

**II.    The commissioner's findings that the deck was more than 30 inches in height and therefore not exempt from permitting requirements is supported by substantial evidence.**

Relators argue that the commissioner's factual finding that the deck's height was more than 30 inches, rendering the deck subject to permitting requirements, is not supported by substantial evidence. They specifically contend that the inspector never testified as to the exact height of the deck, Sierra testified that the deck was under 30 inches, and the photographs in the inspection report are inconclusive as to the deck's height. The department argues that the inspector testified that the deck's height was more than

10

30 inches and that other documentary evidence supports this finding. We agree that the commissioner's findings that the deck was more than 30 inches in height and therefore subject to permit requirements was supported by substantial evidence.

The parties do not dispute that the deck would require a permit if it was more than 30 inches in height. *See* Minn. R. 1300.0120, subps. 1, 4(A)(7).

The commissioner found that the deck was more than 30 inches in height above adjacent grade based on the inspector's testimony and the photographs of the deck that were included in the inspection report that show a measuring tape flush against the deck with the deck height at around 34 inches.[5] The commissioner also found that Sierra testified to only a "recollection" that the deck was under 30 inches. Relators argue that the inspector's testimony was insufficient because the inspector did not testify as to how he arrived at the measurement or to the exact height of the deck. Relators also assert that the photograph is unreliable because the measuring tape is shown to be at a slight angle.[6] But we defer to the commissioner's findings regarding conflicting testimony and the inferences drawn from testimony. *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 278 (Minn. 2001). And "[t]he substantial evidence standard addresses the reasonableness of what the agency did on the basis of the evidence before it." *In re Expulsion of A.D.*, 883 N.W.2d 251, 259 (Minn. 2016) (quotation omitted). Because there

---

[5] The inspection report also describes the deck height as "over 30 [inches] from grade."

[6] We have reviewed the photograph, and it is clear that the measuring tape is aligned with the deck at not more than a slight angle that would not cause a four-inch discrepancy in the measurement.

is adequate record support—from testimony and exhibits—that the deck was more than 30 inches in height, the commissioner's finding is supported by substantial evidence.

## III. The commissioner did not abuse her discretion in her penalty determination.

Finally, relators argue that the commissioner abused her discretion in her penalty determination because she relied on factors not testified to at the hearing and because other statutory factors weigh in favor of leniency.[7] The department contends that penalty determinations are within the commissioner's discretion and that the commissioner properly applied relevant factors in assessing a penalty. We conclude that the commissioner did not abuse her discretion because she considered the appropriate factors.

Statutory factors that agencies may consider in imposing penalties are the willfulness of the violation, the gravity of the violation, the history of past violations, the number of violations, the economic benefit gained by committing the violations, and other factors as justice may require. Minn. Stat. § 14.045, subd. 3(a)(1)-(6) (2024). Agency decisions regarding penalty assessments are not factual findings; rather, they are exercises

---

[7] Relators raise additional arguments throughout their brief, alleging broadly that the department displayed bias by selective enforcement and that the commissioner provided only "post hoc rationalizations" for her decisions, referencing the commissioner's reliance on evidence in the record that was not testified to at the hearing and her application of rule 1350.0400. But relators cite no authority indicating that it was error for the commissioner to rely on evidence in the record or applicable regulations, even if they were not the focus during the hearing. And contrary to relators' argument that the commissioner provided only post hoc legal bases for her decisions, the notice and order for prehearing conference provides the applicable legal authority for each violation relevant to this appeal other than rule 1350.0400, which merely establishes the application of rule 1350.3800, which was cited in the notice. We need not further address Sierra's bias allegations because they are not adequately supported. *See State Dep't of Lab. & Indus. by Special Comp. Fund v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997) (declining to reach inadequately briefed issue).

of discretionary power, *In re Real Est. Salesperson's License of Haugen*, 278 N.W.2d 75, 80 n.10 (Minn. 1979), and reviewing courts will not reverse them absent a clear abuse of discretion, *In re Distrib. License of Minn. Tipboard Co.*, 453 N.W.2d 567, 569 (Minn. App. 1990), *rev. denied* (Minn. May 30, 1990).

The commissioner reasoned that Sierra's failure to secure a permit for the deck installation violated Minn. Stat. § 326B.84 (2024), which provides that the commissioner may use any enforcement provision set forth in Minn. Stat. § 326B.082 (2024) against an individual who "has engaged in a fraudulent, deceptive, or dishonest practice." Minn. Stat. § 326B.84(2). A "fraudulent, deceptive, or dishonest practice" for purposes of this statute includes "performing any construction without obtaining applicable local building permits and inspections." Minn. R. 2891.0040 (2023). Therefore, the commissioner was authorized to use the enforcement mechanisms set forth in Minn. Stat. § 326B.082, including censure and monetary penalties of up to $10,000 per violation. Minn. Stat. § 326B.082, subds. 11(b), 12(b).

The commissioner considered the appropriate factors in imposing the penalty here, concluding that, although relators did not have prior violations, they had received an economic benefit that justified a $1,000 penalty and censure. The commissioner exercised her discretion to reduce the penalty from $7,500 in the initial licensing order to $1,000 in the final licensing order with penalty. Relators argue that it was error for the commissioner to conclude that "[c]ensure is the least punitive measure that the Commissioner can take in a licensing order under Minn. Stat. § 326B.082, subd. 11(b)," because she could have assessed no penalty at all and ordered only corrective measures under a different

13

subdivision. But it is within the commissioner's discretion to decide whether to assess penalties, *Haugen*, 278 N.W.2d at 80 n.10, and the commissioner's statement that censure was the least punitive of the measures does not mean she acted outside of that discretion. The commissioner explained why it was appropriate to assess a penalty to relators, and we discern no abuse of discretion in that decision.

**Affirmed.**